In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-069 CV


____________________



JAMIE JOHNSON, LESLIE LEBLANC and DENITA SANDERS, Appellants



V.



KIM ANN SCOTT and MALIA KNIGHT 


and BLOCKBUSTER, INC., Appellees






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-162,635






O P I N I O N


 This appeal involves the settlement of a national consumer class action against
Blockbuster, Inc. In an earlier appeal, we determined the trial court did not abuse its
discretion in certifying a settlement class in this cause. Peters v. Blockbuster, Inc., 65
S.W.3d 295 (Tex. App.--Beaumont 2001, no pet.). In this second appeal, Denita Sanders,
Jamie Johnson, and Leslie LeBlanc attack the trial court's final judgment approving the
class settlement. We will affirm in part and remand in part.

BACKGROUND


 On March 29, 2000, Kim Ann Scott filed this class action lawsuit against
Blockbuster seeking to recover "fees" customers paid to Blockbuster for failing to return
rental items by the designated time. The class action sought recovery of the unreasonable
and punitive portions of these "extended viewing fees" ("EVFs"). Before February 2000,
Blockbuster charged EVFs at a certain price per day, the "per diem policy." After
February 2000, Blockbuster replaced the per diem policy with a "per period" policy.
Under both the per diem and per period programs, Blockbuster charged the purchase price
of the rental item to the customer's account as a non-return fee when the item was not
returned after a certain number of days. 

 At the time Scott filed suit in Jefferson County, Texas, other similar class action
lawsuits against Blockbuster were pending in other jurisdictions. Malia Knight also filed
such a suit in Harrison County, Texas. On April 11, 2001, the Jefferson County plaintiffs
filed a third amended petition adding Malia Knight as a named plaintiff, and, on that same
date, the trial court, subject to its final ruling, signed an order certifying the class for
settlement purposes and preliminarily approving the settlement agreement. 

 Subsequently, certain class members sought to vacate the settlement approval and
class certification, and also to stay the Jefferson County case in deference to Cohen v. 
Blockbuster, a similar action, which was filed in Cook County, Illinois. On May 30,
2001, the trial court denied the motion to stay and vacate, and both this Court and the
Texas Supreme Court denied emergency relief. In addition, various intervenors brought
interlocutory appeals from the trial court's April 11 order, which was affirmed by this
Court. See Peters, 65 S.W.3d at 301.

 On December 10-11, 2001, the trial court conducted the fairness hearing. On
January 22, 2002, the trial court entered its findings of fact and conclusions of law and
also entered its final judgment approving the settlement agreement and determining the
settlement is fair, adequate, reasonable and in the best interests of the members of the
settlement class. The settlement agreement provides for class members to be issued
coupons or certificates that may be redeemed for various Blockbuster rental or sale items.

 Subsequently, Sanders, Johnson, and LeBlanc appealed. (1) 

STANDARD OF REVIEW


 The appellate court reviews the trial court's approval of a class action settlement for
abuse of discretion. General Motors Corp. v. Bloyed, 916 S.W.2d 949, 955 (Tex. 1996). 
"[T]he appellate court must not merely substitute its judgment for that of the trial court."
Id. An abuse of discretion occurs if the trial court's decision is arbitrary or unreasonable
or is made without reference to any guiding principles, or if the trial court does not
properly apply the law to the established facts. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985). The trial court does not abuse its discretion by
basing its decision on conflicting evidence. Tana Oil and Gas Corp. v. Bates, 978 S.W.2d
735, 741 (Tex. App.--Austin 1998, no pet.).

FAIRNESS HEARING RECORD


 In her first issue, Sanders asserts the fairness hearing record is insufficient to
support the trial court's determination that the class settlement is fair, adequate, and
reasonable. However, the standard we must employ in reviewing such a determination is
not "sufficiency of the evidence" but rather is "abuse of discretion." See Bloyed, 916
S.W.2d at 955. Under an abuse of discretion standard of review, the appellate court does
not review factual issues decided by the trial court under legal or factual sufficiency
standards. Crouch v. Tenneco, Inc., 853 S.W.2d 643, 648 (Tex. App.--Waco 1993, writ
denied). We, thus, will consider Sanders first issue to be a complaint that the trial court
abused its discretion in determining that the proposed settlement was fair, adequate and
reasonable. Tex. R. App. P. 38.1(e).

 In determining whether a proposed class settlement is fair, adequate, and
reasonable, the trial court is required to consider six factors. They are:

 (1) whether the settlement was negotiated at arms' length or was a product 
 of fraud or collusion; 

 (2) the complexity, expense, and likely duration of the litigation; 

 (3) the stage of the proceedings, including the status of discovery; 

 (4) the factual and legal obstacles that could prevent the plaintiffs from prevailing 
 on the merits; 

 (5) the possible range of recovery and the certainty of damages; 

 (6) the respective opinions of the participants, including class counsel, class 
 representatives, and the absent class members.


See Bloyed, 916 S.W.2d at 955. 

BLOYED FACTORS
 

Arms' Length Negotiations


 Asserting there were questionable circumstances preceding the settlement, Sanders
contends the trial court did not make a proper finding regarding the first Bloyed factor,
i.e., whether the settlement was negotiated at arms' length or was a product of fraud or
collusion. While Sanders maintains she does not consider Scott's counsel to have done
anything inappropriate, her opinion of Blockbuster's counsel is another matter. Sanders
contends that Blockbuster's counsel represented to the Cohen judge that the Cohen case
was settled, shortly before the judge was to rule on critical motions of certification and
summary judgment. According to Sanders, this representation caused the Cohen judge to
delay his rulings, and in the meantime Blockbuster reached the present settlement
agreement with the Scott counsel. Sanders asserts the settling parties persuaded the trial
judge to certify the class and preliminarily approve the settlement agreement within a ten
minute span on April 11, 2001. Blockbuster apparently desired to reach a settlement
without confirmatory discovery, Sanders says.

 However, we find that the trial court did not abuse its discretion in determining that
the settlement was the product of an arm's length negotiation and was not collusive. The
record shows the proposed settlement was a product of weeks of intense negotiation, as the
trial court so found. There is also evidence showing that the Cohen negotiations stalled
as a result of a dispute over the amount of attorney's fees. Further, the trial court found,
and the record shows, that the provisions of the proposed settlement increased the benefits
that were contemplated in the Cohen settlement. The utility of the coupon program was
improved from one per visit in Cohen to one per transaction here. Also, as the trial court
found, the proposed settlement added voluntary participation by franchises and improved
the notice provisions. Further, this agreement included finalized plans for remedial efforts
to alter the EVF policy and improved the claim form process. Finally, and significantly,
as the trial court noted, the range of recovery for attorneys' fees was decreased
substantially. The trial court found the decrease 

 was the result of stringent negotiation (the initial demand for attorneys' fees
was $20 million whereas the original offer was $2 million). The final
agreement limits maximum potential for award of attorneys' fees to $9.25
million to be split between numerous law firms. The reduction in attorneys'
fees, which in no way harmed the class, appears to be a significant factor in
the parties reaching the proposed settlement.


 The trial court further noted that timing was the only factor suggesting that the
settlement was not negotiated at arm's length. "Apparently, the proposed settlement was
presented to this Court for preliminary approval shortly before the Court in Cohen was
scheduled to rule on certification and, possibly, defendant's Motion for Summary
Judgment as well." The trial court noted that the timing does "little to negate the fact that
there was substantial negotiation and modification (to the betterment of the class) leading
up to the agreement . . .." The trial court properly found the settlement agreement was
negotiated at arms length and was not a product of fraud or collusion.

Complexity, Expense and Likely Duration of the Litigation


 Sanders states this factor did not make settlement more appealing since her attorneys
already had completed the "difficult work;" i.e., they had conducted substantial discovery,
obtained a class certification of two plaintiff classes and a defendant franchise class and
defeated Blockbuster's summary judgment. 

 To analyze this Bloyed factor, Sanders devotes only five lines of text and cites no
authority nor any part of the record in her argument. She has waived this argument. See
Tex. R. App. P. 38.1(h).

Stage of the Proceedings, Including Status of Discovery


 A trial court correctly analyzes this factor by determining whether sufficient
discovery has been conducted to allow the parties to make an informed decision about the
relative merits of the case and the settlement. See Bloyed, 916 S.W.2d at 955-56. Here,
the trial court noted that: (1) discovery had been conducted in this case and in many other
pending class actions around the country; (2) "countless" documents had been produced;
(3) plaintiffs and defendants' personnel had been deposed; (4) the parties had engaged in
confirmatory discovery since preliminary approval; motions for summary judgment had
been briefed and argued; rulings had occurred in some. Accordingly, the trial court found
there had been sufficient development of the case "to warrant a finding that the parties are
at an appropriate stage of the proceedings to conclude a settlement." Sanders does not
attack the trial court's actual findings, but instead, with no supporting authority as required
by Rule 38.1(h), speculates that the Cohen action was "promising" and the settlement gave
"too large a litigation risk discount to Blockbuster." See Tex. R. App. P. 38.1(h). Such
speculation does not show that the trial court improperly analyzed this Bloyed factor. 

Factual and Legal Obstacles


 The trial court found there were numerous "obstacles" that "raise both significant
and serious questions as to the class' ultimate ability to prevail and, if so, to what extent." 
These obstacles include:


 Serious issues as to whether the agreement between Blockbuster and its
members was ever breached.
 The question of whether the EVF policy was, in fact, a liquidated damage
as opposed to a central term of rental.
 Limitations problems.
 The possibility that plaintiffs' claim for damages would be precluded by the
voluntary payment doctrine.
 Concern as to whether liability could be visited upon Blockbuster (by
apparent authority or vicariously) for fees charged by franchises inasmuch
as Blockbuster did not control the pricing or the EVF policies at the
franchise stores.
 Even if considered liquidated damages, the issue as to whether the EVF
policy would be considered a "penalty."
 Even if found to be a "penalty," the fact that some percentage of the EVF
revenue would be considered a legitimate charge.
 The fundamental question of whether the penalty theory, which is typically
a defense to a liquidated damages claim could be used affirmatively as a
cause of action. 



 Without addressing the specific obstacles noted by the trial court, Sanders asserts
that Blockbuster won three summary judgments by using a false affidavit and that more
recent summary judgments were lost when the "true facts were presented." As support
for this assertion, Sanders cites her own counsel's argument at the fairness hearing. 
However, motions and arguments of counsel are not evidence. McCain v. NME Hosps.,
Inc., 856 S.W.2d 751, 757 (Tex. App.--Dallas 1993, no writ). Sanders further asserts a
summary judgment on liability was awarded to the Knight plaintiffs on the basis that
Blockbuster's late fees were penal as a matter of law. But the Knight interlocutory
summary judgment order was limited to the issue of Blockbuster's per diem EVFs and did
not address most of the "obstacles" identified by the trial court here. Sanders has not
shown that the trial court improperly analyzed this Bloyed factor.

Possible Range of Recovery and Certainty of Damages
 

 Sanders further argues the settling parties made no attempt to estimate the class's
potential recovery. 

 In assessing settlements, the trial court must consider the range of possible damages
that plaintiffs could recover at trial and combine this assessment with the likelihood of
plaintiffs' success at trial to determine if the settlement falls within the range of recoveries
that is fair. In re Motorsports Merch. Antitrust Litig., 112 F.Supp.2d 1329, 1334 (N.D.
Ga. 2000). 

 While Sanders argues there should be specific upper range numbers in the record
for the trial court to adequately evaluate the possible range of recovery, such mathematical
precision is not required. See e.g. Bloyed, 916 S.W.2d at 956-57 (approving certificate
settlement base on evaluation of claims asserted without requiring or considering any
specific possible upper range of recovery); see also Motorsports Merch., 112 F.Supp.2d
at 1334 (examining the face value of settlement agreements in light of "a real risk of no
recovery without the settlements" and not quantifying the possible range of recovery); see
also Shaw v. Toshiba Am. Inf. Sys., Inc., 91 F.Supp.2d 942, 960 (E.D. Tex. 2000)
(finding range of possible recovery supported approval of settlement where plaintiff faced
significant obstacles to recovery and might receive greater overall value from certificates
than if the case had been litigated to verdict). 

 In considering the possible range of recovery the plaintiffs might obtain if they
succeeded at a trial on the merits, the trial court found that the range could be large. The
court determined that the starting point of the range was zero in light of the numerous legal
obstacles plaintiffs faced and recognized that the difficulty arose in attempting to establish
the high end of the range. The trial court found that the plaintiffs and class counsel had
made a reasonable evaluation of the risks and uncertainties associated with a recovery on
their claims. The trial court further noted that while the range of recovery could reach into
the billions, "the certainty of damages [was] elusive." 

 The trial court has analyzed this Bloyed factor satisfactorily.

Opinions of Participants


 In considering the final Bloyed factor, i.e., - the respective opinions of the
participants, including class counsel, class representatives, and the absent class members,
the trial court noted that "obviously" the class representatives, class counsel and
Blockbuster approved of the settlement. So, the court focused its analysis on the absent
class members and found that, in a class of approximately 40 million members, 500 had
opted out and only fifty four objections were formally filed, resulting in disagreement
being voiced by "less than .002% of the class[.]" The trial court observed that as the
parties had undertaken "significant effort" in the notice campaign, it was reasonable to
conclude that a sufficient percentage of the class had received notice, thus making "the
relative paucity of negative response instructive."

 Sanders argues that the opinion of class counsel and their clients is meaningless
because class counsel did not obtain sufficient information to determine whether the
settlement was fair, adequate and reasonable. However, she cites no authority nor any part
of the record in her argument and, thus, has waived this argument. See Tex. R. App. P.
38.1(h). 

VALUE OF CONSIDERATION


 In issue one, Sanders also attacks the fairness of the settlement by asserting the
settling parties provided no information regarding the value of the consideration being
provided to the class by the coupon settlement agreement. (2) In particular, Sanders argues
that the face value of the coupons is not the true measure of their actual value, but rather
the value is largely dependent on the class's expected redemption rate, about which, asserts
Sanders, the settling parties provided no evidence. 

 The trial court considered numerous factors in determining the value of the
settlement: the certificates' face value, the relative value of the certificates to the overall
transaction, the certificates' transferability, and the ease and likelihood of using the
certificates. The trial court found the face values of the coupons, which range from
$10.06 to $21.16 per class member, were a significant percentage of the overall costs of
the rentals, and, in some instances, were free rentals with no associated costs. The trial
court further found a high rate of redemption was likely, given the intense notice efforts,
the publicity surrounding the settlement, the long redemption period, the coupons'
transferability, and the customers ability to redeem coupons in nearly 5,000 stores. The
trial court also found Blockbuster was exposing itself to approximately $450 million in free
or reduced charges under circumstances that will maximize the potential for usage. Thus,
the trial court determined the certificates constituted a real economic benefit to the class. Sanders maintains the trial court should have rejected the settlement because there
was no determination of the coupon redemption rate; however, she does not contend that
any court has imposed such a requirement. Instead of requiring a showing of precise
redemption rates, other courts have examined various factors to reach a general conclusion
that the certificates likely will be redeemed. See, e.g., In re Mexico Money Transfer
Litig., 164 F.Supp.2d 1002, 1017-19 (N.D. Ill. 2000), aff'd, 267 F.3d 743 (7th Cir. 2001)
(certificates likely to be redeemed as a result of face value, ease of use, and utility for
services most class members would purchase anyway); Motorsports Merch., 112
F.Supp.2d at 1335-37. 

 Here, the trial court properly considered appropriate factors in determining that the
coupons were a real economic benefit to the class, and did not abuse its discretion in
finding the settlement was fair, adequate, and reasonable. We overrule Sanders's issue
one.



BURDEN OF PROOF


 In her second issue, Sanders maintains the trial court wrongly placed the burden of
proof on the objectors to disprove the settlement. Sanders contends that the trial judge's
remarks shows that he assumed the class settlement was fair, adequate and reasonable,
unless the objectors proved otherwise. However, Sanders devotes less than six lines of her
brief to this issue and fails to cite any specific portion of the record to support her claim. 
She has waived this issue. See Tex. R. App. P. 38.1(h). We overrule Sanders's issue two.

SUFFICIENCY OF RULE 42 CRITERIA ANALYSIS


 In her third issue, Sanders contends the trial court failed to conduct a rigorous
analysis of the Rule 42 criteria before ruling on class certification and thereby directly
violated McAllen Medical Center, Inc. v. Cortez, 66 S.W.3d 227 (Tex. 2001). 

 In Peters v. Blockbuster, Inc. 65 S.W.3d 295 (Tex. App.--Beaumont 2001), we
previously have considered the trial court's class certification ruling in this cause. After
extensive briefing and oral argument by the parties, we found the trial court rigorously
analyzed Rule 42's criteria prior to distribution of the class notice and, thus, satisfied the
McAllen requirements. Peters, 65 S.W.3d at 302-03. Sanders does not argue that any
intervening change in substantive case law warrants our revisiting this issue. And, under
the "law of the case" doctrine, we decline to do so. See Briscoe v. Goodmark Corp., 102
S.W.3d 714 (Tex. 2003). (3)
 We overrule Sanders's third issue.

COMITY


 In their first issue, Johnson and LeBlanc contend the principles of comity required
the trial court to abate or stay the Jefferson County suit in favor of the Cohen case. 

 The Robinson intervenors moved for a stay in favor of Cohen on the ground that
Cohen had been filed first. The trial court denied this motion, and, on interlocutory
appeal, this Court found the decision not to stay or abate was not ripe for review. Peters,
65 S.W.3d at 309. The Robinson intervenors settled their objections in the trial court and
are not involved in this appeal. Neither Sanders nor Johnson and LeBlanc timely raised
the issue of staying or abating the case in the trial court. A request for a stay or an
abatement must be timely raised or it is waived. Wyatt v. Shaw Plumbing Co., 760
S.W.2d 245, 248 (Tex. 1988). Objectors have not preserved this issue for our review. 
Tex. R. App. P. 33.1. Johnson's and LeBlanc's first issue is overruled. (4)

NON-RETURN FEE CLAIMS


 In their third issue, Johnson and LeBlanc complain the non-return class members
will get certificates only if they mail a claim form to Blockbuster. Johnson and LeBlanc
argue that since few of these class members can be expected to submit the forms, their
non-return fee claims will be released for little compensation. However, Johnson and
LeBlanc do not cite any authority to support their contention that the settlement should be
undone for this reason.

 Claims forms have been used in other class settlements. See, e.g., In re
Motorsports Merch., 112 F. Supp.2d at 1331. Here, the trial court noted the leniency of
the settlement's claim form policy, observing that class members were not required to
produce a receipt to document their fees. The claim form mechanism, which requires the
submitting of forms but does not require supporting documentation, appears to be a
compromise. As explained by the Bloyed Court, "'[I]nherent in compromise is a yielding
of absolutes and an abandoning of highest hopes.'" Bloyed, 916 S.W.2d at 957 (quoting
Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)). Johnson's and LeBlanc's third
issue is overruled.


SETTLEMENT GAP


 Johnson and LeBlanc further argue that part of the settlement class, under the terms
of the agreement as written, get nothing. They contend there is a gap from March 1, 1998
to April 1, 1999, where members of the class who incurred late fees are entitled to
nothing. The trial court found this argument to be without merit. We disagree. 

 The trial court heard testimony and arguments on this matter. The settlement
agreement provides that any member of the class who incurred EVFs between January 1,
1992 and April 1, 2001, may receive certificate consideration. Paragraph II, B, 1 (a)-(c)
of the agreement provide that class members who incurred late fees between April 1, 1999
and April 1, 2001, are to receive various certificates, depending on the amount they spent.
Paragraph II, B, (1)(d) provides for those who did not pay a late fee in the period from
March 1, 1998 through November 15, 2000, to be entitled to the same coupons as those
class members covered by subparagraphs (a)-(c), so long as they submit a claim form. 

 But members who paid late fees from March 1, 1998 through March 31, 1999,
("gap members") are not covered by the agreement. They are not covered by
subparagraph (d) because they actually paid fees, whereas (d) covers only those who did
not pay fees during the period. Further, subparagraphs (a)-(c) do not apply to the gap
members because these provisions apply only to those members who paid fees between
April 1, 1999 through April 1, 2001. 

 Based on the language of subparagraph (a), however, Appellees argue there is no
gap. Subparagraph (a) provides: "[M]embers of the Settlement Class who paid extended
viewing fees ("EVFs") to Blockbuster between and including April 1, 1999, and April 1,
2001, in an aggregate amount equal to or less than $30 would receive two (2) certificates
for a free video rental . . .." Appellees maintain that since gap members paid $0 between
April 1, 1999, and April 1, 2001, they paid "less than $30," and thus are covered by
subparagraph (a). Appellees overlook the plain language of the provision that requires an
actual payment by the members. Members who paid $0 did not make a payment. We
appreciate that Appellees apparently intend for all members of the class to receive
compensation as set out in the agreement and we appreciate that they have "explicitly
affirmed" to the trial court at the fairness hearing that no segment of the class would be
left without compensation. Our problem is with the language of the settlement agreement,
not with Appellees' intentions.

 We find the trial court abused its discretion by finding that Objectors' "gap
argument" was without merit. (5) 


ATTORNEY FEES


 Sanders argues that her counsel should be awarded attorney's fees. Taking a
different approach, Johnson and LeBlanc argue the settlement agreement is unfair and
should have been rejected because it provides fees only to Scott's and Knight's attorneys. 

 Objectors did not raise this issue at the fairness hearing. In fact, Johnson and
LeBlanc say they are not claiming the trial court should have granted their request for
attorney's fees; because this was a coupon settlement case such a request would have been
futile, they reason. While Johnson and LeBlanc acknowledge they did not participate in
the settlement negotiations, they contend they benefitted the class by commencing suit
against Blockbuster and developing the case through discovery. 

 We review the trial court's decision regarding class action attorney's fees solely for
abuse of discretion. Crouch v. Tenneco, Inc., 853 S.W.2d 643, 646 (Tex. App.--Waco
1993, writ denied). The settlement opponent must prove the trial court has acted
arbitrarily and unreasonably, not simply that the court has made an error in judgment. Id.

"Objectors are not ordinarily awarded attorneys' fees, except where their efforts have
conferred benefits on class members generally, as distinguished from the objectors
themselves particularly." Duhaime v. John Hancock Mut. Life Ins. Co., 2 F.Supp.2d 175,
176 (D. Mass. 1998). Pursuing a parallel case is not enough to require an award of
attorneys' fees. See Chemical Bank v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1309 (9th
Cir. 1994). And, here, as a result of their pursuit of their gap argument, Objectors have
benefitted the class as a whole. Consequently, they may or may not be entitled to
attorneys' fees, in the trial court's discretion, for their advocacy on behalf of the "gap"
members of the class.

CALIFORNIA RESIDENTS


 In issue four, Johnson and LeBlanc also contend the California class members
should have been excluded from the class. They argue California law is more favorable
to the California class members than is Texas law because California does not differentiate
between a liquidated damages clause and a charge for alternative performance when
considering whether there is a penalty. Thus, Johnson and LeBlanc maintain California
residents would avoid Blockbuster's main defense, namely that its "extended viewing fee"
is not a penalty for breach, but only an alternative performance charge. 

 However, the trial court found that even if it assumed that California law is more
favorable, that fact would not mandate severance of the California plaintiffs. The trial
court also stated: 

 If that criteria were sufficient to require severance, there would never be a
national class-action and would require the approving court to navigate the
labyrinth of individual state law to determine which states, taken alone,
might contain laws more favorable to the class. In any event, this Court has
taken into account variations in the laws of all of the states, including the
laws on which the California objectors rely. In this regard, it should be
noted that at least one California court (in the Ralphs v. Blockbuster case)
applying California law has granted Blockbuster's Motion for Summary
Judgment. 


 And subsequent to the trial court's findings, another California court, which was
considering the extended viewing fees issue granted Blockbuster's motion for summary
judgment on March 6, 2003, in Pickens v. Blockbuster, Inc. Cause No. 2001021130 in the
Superior Court of California, County of Alameda.

 The California summary judgment decisions, which Objectors fail to address,
support the trial court's findings. Thus, the trial court did not abuse its discretion. We
overrule Johnson's and LeBlanc's issue four.

CONFORMATION OF SETTLEMENT


 In issue five, Johnson and LeBlanc maintain the settlement should have been
approved only if the agreement were conformed to the oral representations of the class
representatives and Blockbuster. But, they do not brief this issue and, thus, have waived
it. See Tex. R. App. P. 38.1(h).

REWARD OF TIME-BARRED CLAIMS


 In their reply brief, Johnson and LeBlanc also argue the settlement rewards time-barred claims at the expense of timely claims. However, Objectors cite no authority nor
any part of the record to support this argument and, thus, have waived it. See Tex. R.
App. P. 38.1(h).

 For the foregoing reasons, we overrule all of appellants' issues except those relating
to the settlement gap and attorneys' fees and affirm the trial court's judgment in all other
respects. We remand this cause to the trial court for further proceedings consistent with
this opinion.

 AFFIRMED IN PART AND REMANDED IN PART.






 DON BURGESS

 Justice

Submitted on February 20, 2003

Opinion Delivered July 31, 2003


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. Sanders adopts Johnson's and LeBlanc's arguments one, two, three, and four, 
but does not adopt argument five regarding California residents. Johnson and LeBlanc
adopt all of Sanders's arguments. 
2. Johnson and LeBlanc also argue this question. 
3. In Briscoe v. Goodmark Corp., the Texas Supreme Court explained that under the
law of the case doctrine, the appellate court is ordinarily bound by its initial decision if
there is a subsequent appeal in the same case. The doctrine is the principle under which
questions of law decided on appeal to a court of last resort govern the case in its
subsequent stages. By narrowing the issues in later phases of the litigation, the doctrine,
which is based on public policy and aimed at finality of litigation, is intended to achieve
uniformity of decision as well as judicial economy and efficiency. 


Briscoe, 102 S.W.3d at 716 (footnotes and citations omitted).

4. Johnson's and LeBlanc's second issue, which concerns attorney fees, is considered
in conjunction with Sanders's fourth issue, also involving attorney fees.
5. The trial court found: "Objectors next argue that the proposed settlement
agreement does not cover individuals who incurred late fees between March 1, 1988 [sic]
and April 1, 1999. Based on the language of the settlement agreement and all matters
presented to this Court at the fairness hearing, the Court believes this argument to be
without merit."