In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-037 CV


____________________



DENITA SANDERS, Appellant



V.



BLOCKBUSTER, INC., Appellee






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D 162-535






O P I N I O N


 This appeal involves the settlement of a national consumer class action against
Blockbuster, Inc. There have been two prior appeals in this cause - Peters v. Blockbuster,
Inc., 65 S.W.3d 295 (Tex. App.--Beaumont 2001, no pet.) where we determined the trial
court did not abuse its discretion in certifying a settlement class; and Johnson v. Scott, 113
S.W.3d 366 (Tex. App.--Beaumont 2003, pet. filed) where we affirmed the class action
settlement in part and remanded the case for further proceedings. In this third appeal,
Sanders attacks two orders entered by the trial court on December 23, 2002: (1) a declaratory
judgment confirming that all members of the Scott class are barred from asserting any further
claims against Blockbuster based on its past or present extended viewing fee ("EVF) policies
and (2) a permanent injunction enjoining the class members from prosecuting these claims
elsewhere. Sanders raises five issues.

 In her first issue, Sanders contends this appeal should have been consolidated with an
earlier appeal. We previously considered and denied Sanders's motion to consolidate, and
need not revisit that decision. Issue one is overruled.

 Central to issues two, three, and four is Sanders's contention that the trial court
reinterpreted or adopted a new and impermissibly broad reading of the class action settlement
agreement by finding it included post-April 1, 2001 claims. Issue two contends, given the
trial court's "new interpretation" of the class settlement, the trial court abused its discretion
in approving the class settlement as fair, adequate and reasonable and further contends class
counsel is inadequate. Issue three argues class notice was deficient in light of the trial court's
"new interpretation." Issue four asserts the trial court erred in "re-interpreting" the class
settlement to include post-April 1, 2001 claims.

 To determine whether any of these three issues has merit, we first must consider
whether, as Sanders contends, the trial court "reinterpreted" the class settlement to
impermissibly include post-April 1, 2001 claims.

 Sanders argues the trial court's holding in the declaratory judgment that the Scott
settlement applies to post-April 1, 2001 claims must be rejected for a "simple" reason,
namely the class definition. The Scott settlement class is defined as "[a]ll members of
Blockbuster who incurred an extended viewing fee ("EVF") or nonreturn fee between
January 1, 1992, and April 1, 2001." (1) Without citing supporting case authority, Sanders
maintains that the class definition precludes application of the settlement to post-April 1,
2001 transactions.

 Blockbuster contends Sanders has confused two entirely separate sections of the
agreement: (1) the section that defines the class and (2) the section that defines the claims
being released by the class. We agree. The "class definition" section (Paragraph II.A. of the
Settlement Agreement) provides that the class consists of all Blockbuster members who paid
EVFs between January 1, 1992 through April 1, 2001. But the date range contained in this
section defines only who is in the class, not what claims are released. 

 On the other hand, the description of what claims are released appears in an entirely
different section of the settlement agreement. In Paragraph II. F., entitled "Releases,"
subparagraph b defines "Released Claims" as:

 [A]ny and all claims or causes of action of any nature whatsoever, including
but not limited to any claim for violations of federal, state, or other law
(whether in contract, tort, or otherwise, including statutory, common law,
property, and equitable claims), and also including "Unknown Claims" (as
defined in subparagraph c.), that have been or could have been asserted against
the Released Parties in the Litigation or any other complaint, action, or
litigation in any other court or forum based upon, or in any way relating to
Blockbuster's extended viewing fee policies, amounts charged for extended
viewing, policies regarding lost or unreturned videos or any other rental items,
amounts charged for lost or unreturned videos or any other rental items, or any
other Blockbuster policies dealing with, referring to , involving, or related to
extended viewing fees. . . . 


 In its final declaratory order granting Blockbuster's motion to enforce judgment and
settlement agreement, the trial court determined that "[t]he definition of 'Released Claims'
encompasses any claims attacking Blockbuster's EVF policies, including Blockbuster's 'per
period' EVF policy that Blockbuster was using at the time of the settlement and continues
to use today." (2) We agree. Supporting the trial court's decision is the plain language of the
Settlement Agreement defining "Released Claims," i.e. "[A]ny and all claims or causes of
action of any nature whatsoever, . . . that have been or could have been asserted against the
released Parties or any other complaint, action, or litigation in any other court or forum
based upon, or in any way relating to Blockbuster's extended viewing fee policies, . . .." 
(Emphasis added). This definition clearly identifies the released claims as any and all claims
by the class attacking Blockbuster's EVF policies.

 In addition to the plain language of the settlement documents, support is found else
where for the trial court's determination. As explained in In Re Prudential Ins. Co. of Am.
Sales Practice Litigation, 261 F.3d 355 (3d Cir. 2001), permitting class members to
prosecute claims based on the same allegations as claims released in another case "would
allow an end run" around the settlement and "seriously undermine the possibility for settling
any large, multidistrict class action." In Re Prudential, 261 F.3d at 366-67. The Prudential
court also noted "[i]t is now settled that a judgment pursuant to a class settlement can bar
later claims based on the allegations underlying the claims in the settled class action. This
is true even though the precluded claim was not presented, and could not have been
presented, in the class action itself." In Re Prudential, 261 F.3d at 366 (citing TBK Partners,
Ltd. v. Western Union Corp. 675 F.2d 456,460 (2d Cir. 1982)). The Prudential Court also
explained that the important policy interest of judicial economy was served by "permitting
parties to enter into comprehensive settlements that 'prevent relitigation of settled questions
at the core of a class action.'" Id. 

 Sanders attempts to distinguish In Re Prudential by arguing that, unlike Prudential, 
the instant case is involved with transactions based on a "different nucleus of operative fact." 
Neither party cites a Texas case either applying or rejecting the Prudential rational, or
otherwise analyzing broad form releases in class actions (3)
 and we have found none. 
However, we find guidance from other jurisdictions as well as Texas case law. 

 The principle of res judicata applies to class action settlements. See Quigley v.
Braniff Airways, Inc., 85 F.R.D. 74, 76 (N.D. Tex. 1979)(holding that class claims of
discriminatory hiring practices were barred by previous judgment and class settlement on the
same practices because both suits involved the same cause of action). "Res judicata, or
claims preclusion, prevents the relitigation of a claim or cause of action that has been finally
adjudicated, as well as related matters that, with the use of diligence, should have been
litigated in the prior suit." Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992).
In Barr, the Texas Supreme Court adopted the "transactional" approach of the Restatement 
(Second) Of Judgments § 24 to res judicata questions. Id. at 631. "[A] final judgment on
an action extinguishes the right to bring suit on the transaction, or series of connected
transactions, out of which the action arose." Id. 

 A "transaction or series of connected transactions" "connotes a natural grouping or
common nucleus of operative facts." Restatement (Second) Of Judgments § 24 cmt. b
(1982). Whether a transaction or series of transactions exist is to be determined
"pragmatically, 'giving weight to such considerations as whether the facts are related in time,
space, origin, or motivation, whether they form a convenient trial unit, and whether their
treatment as a trial unit conforms to the parties' expectations or business understanding or
usage.'" Barr, 837 S. W.2d at 631 (quoting Restatement (Second) Of Judgments § 24
(2). 

 Where there is a legal relationship, such as under a lease or contract, all claims arising
from that relationship will arise from the same subject matter and be subject to res judicata. 
See Weiman v. Addicks-Fairbanks Road Sand Co., 846 S.W.2d 414, 419 (Tex. App.--Houston [14th Dist.] 1992, writ denied) (finding existence of core facts common to all
claims regarding continued operation of landfill after lease expired; combining claims would
be consistent with achieving comprehensive conclusion to business relationship). 

 Here there is a series of connected transactions that arise from the same legal
relationship. Claims by the class for post-April 1, 2001 EVFs arise from the same "nucleus
of operative facts" - the rental of movies, followed by the assessment of EVFs pursuant to
the same EVF policies - as claims for pre-April 1, 2001 EVFs. The same policies are
involved; the same parties are involved. 

 Other jurisdictions have considered claims for "new incidents" arising from an
ongoing policy or program. In Monahan v. New York City Dep't of Corrs., 214 F.3d 275 (2d.
Cir. 2000), the court found "new incidents" alleged in a second suit over a challenged sick
leave policy were barred by res judicata because the policy had been adjudicated by the prior
settlement and consent judgment and these "new incidents" were part of the same
"transaction" for purposes of res judicata. Monahan, 214 F.3d at 289-290, 293. In Huck v.
Dawson, 106 F.3d 45 (3d Cir. 1997), the court rejected the plaintiff's contention that he
could pursue claims for continued denial of access to sea ramps after a prior judgment on
claims regarding similar denials because that conduct "is precisely the same conduct
challenged in the earlier suit." Huck, 106 F.3d at 49-50. 

 Thus, in light of the plain language of the settlement documents and analogous case
law, we find that the trial court did not "broaden" or "reinterpret" the settlement agreement. 
Instead, the trial court properly determined that "[t]he definition of 'Released Claims'
encompasses any claims attacking Blockbuster's EVF policies, including Blockbuster's 'per
period' EVF policy that Blockbuster was using at the time of the settlement and continues
to use today[,]" and that "[t]he Settlement Class members are therefore barred from
challenging Blockbuster's EVF policies in a second suit. The Settlement Class members may
not challenge the released policies - including the 'per period' EVF policy - in any litigation,
even for EVFs incurred after April 1, 2001." 

 For Sanders to prevail on either issue two, three, or four, we would have had to
determine that the trial court reinterpreted or broadened the Scott class action settlement
agreement. As we did not, we overrule issues two, three and four.

 In her final issue, Sanders contends the trial court erred in issuing the antisuit
injunction. However, Tex R. Civ. P. 308 provides that a trial court "shall cause its judgment
and decrees to be carried into execution . . .." Under Rule 308, a trial court is vested with
both the authority and affirmative duty to enforce and to protect its orders and decrees. In
re Crow-Billingsley Air Park, Ltd., 98 S.W.3d 178, 179 (Tex. 2003); Bridas Corp. v. Unocal
Corp., 16 S.W.3d 887, 889 (Tex. App.--Houston [14th Dist.] 2000, pet. dism'd w.o.j.) The
court's powers of enforcement include the issuance of antisuit injunctions to prevent
"relitigating the identical issues in a foreign court." Bridas Corp., 16 S.W.3d at 890. An
antisuit injunction is appropriate in the context of protecting a class action settlement from
attack in other jurisdictions. Kortebein v. American Mut. Life Ins. Co., 49 S.W.3d 79, 88-89
(Tex. App.--Austin 2001, pet. denied). We overrule Sanders's fifth issue.

 For the foregoing reasons, we overrule all of Denita Sanders's issues and arguments
and affirm the trial court's declaratory order and permanent injunction enforcing judgment.


 AFFIRMED.



 _________________________________

 DON BURGESS

 Justice

Submitted on October 2, 2003

Opinion Delivered February 5, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. Specifically excluded from the class are (1) members of the settlement class in
Herrada v. Blockbuster Inc. [a Michigan case] and (2) all currently serving judges and
justices of the state of Texas and their spouses and anyone within three degrees of
consanguinity from those judges and justices and their spouses. 
2. As the trial court further found: "Blockbuster customers who were not included in
the Settlement Class are beyond the scope of the release. This includes customers who opted
out of the Scott settlement class, customers who joined Blockbuster after April 1, 2001, and
customers who joined before April 1, 2001 but did not incur any EVFs before that date." 
3. The Texas Supreme Court has approved broad form releases. Keck, Mahin & Cate
v. Nat'l Union Fire Co., 20 S.W.3d 692, 698 (Tex. 2000)(holding broad release of claims
attributable to professional services extended to malpractice claims even though recitals
primarily addressed unpaid fees.). An earlier decision, Victoria Bank & Trust Co. v. Brady,
811 S.W.2d 931 (Tex. 1991), had required that general releases be narrowly construed and
that the releasing instrument must "mention" the claim to be released. Brady, 811 S.W.2d
938. "Even if the claims exist when the release is executed, any claims not clearly within the
subject matter of the release are not discharged." Brady, 811 S.W.2d at 938 (citation
omitted). However, the Keck Court distinguished Brady, noting it was related to a specific
loan transaction and further did not forbid broad form releases. Keck, 20 S.W.3d at 698.
"Brady simply holds that the release must 'mention' the claim to be effective. It does not
require that the parties anticipate and identify each potential cause of action relating to the
release's subject matter." Id. (citations omitted).