

# NUMBER 13-20-00113-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**HIDALGO COUNTY
DETENTION CENTER,**                                                                  **Appellant,**

**v.**

**ISIDRO VILLA HUERTA,**                                                                  **Appellee.**

---

### On appeal from the County Court at Law No. 5
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva
Memorandum Opinion by Justice Benavides**

In this premises defect case, appellant Hidalgo County Detention Center[1] (Hidalgo

County) appeals from the denial of its plea to the jurisdiction based on an assertion of

---

[1] Our style reflects the pleadings filed by the plaintiff and the judgment issued by the trial court; however, Hidalgo County, alleging that it was misnamed, is the party who has appeared, answered, filed the plea to the jurisdiction at issue, and filed the notice of appeal.

governmental immunity. By two issues, Hidalgo County argues that appellee Isidro Villa Huerta's claim falls outside the Texas Tort Claims Act's (TTCA) limited waiver of immunity because (1) Hidalgo County conclusively established that it lacked actual knowledge of the dangerous condition at the time of the alleged injury, and (2) Huerta admitted that he was aware of the dangerous condition.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). We reverse and render judgment dismissing the case for want of jurisdiction.

## I.    BACKGROUND

The facts in this case are largely undisputed. On February 2, 2017, a table in a "day room" at the county jail broke at the base, causing the inmate sitting at the table to fall and allegedly injure himself. That same day, the Hidalgo County Sheriff's Office submitted a "Maintenance Work Order Request Form." A technician welded the table and returned the form half an hour later, indicating that the problem had been resolved.

Huerta, an experienced welder and inmate[3] at the jail, observed the repair performed by the technician. Two days later, on February 4, Huerta was sitting at the same table with three other inmates playing a game of Spades when the table broke in the same place, causing Huerta to fall to the ground and allegedly injure himself. The

---

[2] Unlike its first issue, Hidalgo County couches its second issue as purely merits based and not as a jurisdictional defect. However, because a claimant's knowledge of the dangerous condition is also a jurisdictional defect, we treat both issues as jurisdictional challenges. *See County of Cameron v. Brown*, 80 S.W.3d 549, 558–59 (Tex. 2002); *Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 837 (Tex. App.—Dallas 2010, no pet.) ("[S]ubject-matter jurisdiction cannot be waived or conferred by agreement, and we have a duty to consider a question of subject-matter jurisdiction sua sponte because the district court's power to decide the merits, as well as our own, rests upon it." (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–46 (Tex. 1993))).

[3] It is unclear from the record whether Huerta was an inmate or detainee at the jail. For ease of reference, we will refer to Huerta and others being held at the jail as inmates.

2

parties agree that Huerta was a licensee at the time of the incident.

The trial court denied Hidalgo County's plea challenging the existence of jurisdictional facts, and this interlocutory appeal ensued. *See id.* § 51.014(a)(8).

## II.     STANDARD OF REVIEW

Subject matter jurisdiction is essential to a court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

A plea to the jurisdiction is a procedural vehicle used to challenge the trial court's jurisdiction. *Blue*, 34 S.W.3d at 554. When a plea to the jurisdiction "'challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of action." *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004)). In such cases, the trial court's review of the plea mirrors that of a traditional motion for summary judgment. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (citing *Miranda*, 133 S.W.3d at 228); *see generally* TEX. R. CIV. P. 166(a) ("Summary Judgment"). In a summary judgment review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (citing *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.

2002)).

The defendant carries the initial burden to establish that the trial court lacks jurisdiction, and if it does, then the plaintiff must raise a material fact issue regarding the jurisdictional issue. *Garcia*, 372 S.W.3d at 635 (citing *Miranda*, 133 S.W.3d at 228). If the evidence creates a fact question regarding jurisdiction, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228.

### III.    APPLICABLE LAW

Governmental immunity from suit protects the political subdivisions of the State from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). The TTCA provides a limited waiver of governmental immunity for certain negligent conduct, including "personal injury . . . caused by a condition . . . of . . . real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.025.

Except for limited circumstances that do not apply here, "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property." *Id.* § 101.022(a). The duty owed to a licensee on private property requires that "a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn

4

a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385 (Tex. 2016) (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). The licensee must establish that the landowner had actual knowledge of the dangerous condition at the time of the incident; constructive knowledge of the dangerous condition or mere knowledge that a dangerous condition may develop over time is insufficient. *Id.* at 392 (citations omitted).

"Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Id.* (quoting *Univ. of Tex.–Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam)). "Evidence that an owner or occupier knew of a safer, feasible alternative design, without more, is not evidence that the owner knew . . . that a condition on its premises created an unreasonable risk of harm." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000).

"If a licensee is aware of a dangerous condition, he has all that he is entitled to expect, that is, an opportunity for an intelligent choice as to whether the advantage to be gained by coming on the land is sufficient to justify him in incurring the risks involved." *County of Cameron v. Brown*, 80 S.W.3d 549, 557–58 (Tex. 2002). In other words, "[i]f the licensee has the same knowledge about the dangerous condition as the licensor, then no duty to the licensee exists." *Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam) (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974)).

5

Therefore, to recover on a premises defect theory, "a licensee must prove that he did not know of the dangerous condition." *Payne*, 838 S.W.2d at 237. A licensee has knowledge of the condition if the condition was perceptible to him or if he could infer the condition's existence from facts within his present or past knowledge. *See Miller*, 102 S.W.3d at 709 (citing *Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 564 (Tex. 1976)).

## IV.   ANALYSIS

### A.   Hidalgo County's Knowledge of the Dangerous Condition

By its first issue, Hidalgo County argues that it conclusively established that it lacked actual knowledge of the dangerous condition at the time of the incident. *See Sampson*, 500 S.W.3d at 392. According to Hidalgo County, "[its] employees had no knowledge of a dangerous condition of the subject table because it had been welded and they were informed and believed it had been adequately repaired." Hidalgo County made a similar argument during the plea hearing, saying "when it failed the second time [on February 4], we had no knowledge that it was going to do that; that it was dangerous or likely to happen."

We disagree that Hidalgo County conclusively established that it lacked actual knowledge of the dangerous condition because February 2 was not the first time the table had been repaired with a weld that would subsequently fail. According to an "Incident Report" prepared by Hidalgo County employee Sergeant Oscar O. Villarreal on February 2, when the table failed that day, he noticed that it "was broken where it had been *previously* wielded [sic]." (Emphasis added). The report also states that Sergeant Villarreal was responding to a "Medical Emergency" and that the inmate sitting at the table

6

had fallen backwards and was "in pain." Viewing the evidence in the light most favorable to Huerta: (1) the table failed in the same place at least three times, the first occurring prior to February 2; (2) Hidalgo County repaired the first failure with a weld; (3) that weld failed on February 2, causing injury to an inmate; (4) knowing this, Hidalgo County nonetheless elected to weld the table again; and (5) that weld failed on February 4, causing injury to Huerta. Thus, Hidalgo County's own report raises a fact question as to whether it knew that merely welding the table again was an inadequate repair that created an unreasonable risk of harm to users of the table. *See id.* (noting that actual knowledge can be inferred from prior reports of the dangerous condition). We overrule Hidalgo County's first issue.

**B.    Huerta's Knowledge of the Dangerous Condition**

In the alternative, Hidalgo County argues that Huerta made a fatal admission about his knowledge of the dangerous condition. We agree.

During his deposition, Huerta explained that he has significant welding experience:

[Attorney]:    All right. Before you—have you got some we[l]ding experience yourself?

[Huerta]:    Yes, sir, I do.

[Attorney]:    Tell me about your welding experience.

[Huerta]:    I'm a diesel technician. I weld on all kinds of semi, 18-wheelers. I worked at Caterpillar, which also involves a lot of welding. I—I've got a lot of we[l]ding experience.

Huerta acknowledged that he observed the table's repair on February 2, and based on his experience, he knew the weld was inadequate to ensure the structural integrity of the table because Hidalgo County's "in-house maintenance guy" did a "quick tack [weld]."

7

According to Huerta, it "probably took him like five minutes to weld it." By contrast, after the table broke on February 4, Huerta said Hidalgo County hired a "professional welder" who performed "a very good weld."

> [Attorney]: Okay. And—and based on your experience, you could tell when they welded it [on February 2] that—that was not an adequate weld?
>
> [Huerta]: Yes, sir.
>
> [Attorney]: Okay. Because all they did was put a bead around the one— circle bead around the base?
>
> [Huerta]: Yes, sir.

Nevertheless, two days later, Huerta decided to sit at the same table and play a game of Spades with three other inmates, including, according to Huerta, "a really heavyset guy," the "biggest dude in there." At the hearing, Huerta's counsel argued that as an inmate, Huerta had no choice of where to sit, and therefore, his presence at the table did not indicate that he accepted the risks associated with sitting at the table. *See Brown*, 80 S.W.3d at 557–58. There is no evidence in the record to support his counsel's argument. *See Johnson v. Scott*, 113 S.W.3d 366, 373 (Tex. App.—Beaumont 2003, pet. denied) (explaining that "arguments of counsel are not evidence" (citing *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ))). The table is located in a "day room" (i.e., common area) next to five other tables, each capable of seating four people. Nothing in Huerta's testimony, even when viewed in the light most favorable to him, suggests that inmates were assigned to a particular table or even required to use the "day room." Therefore, because Huerta was aware of the dangerous condition, Hidalgo County was under no duty to warn him or make the condition

8

reasonably safe. *See Miller*, 102 S.W.3d at 709.

Because the evidence conclusively refuted Huerta's claim, Hidalgo County's immunity was not waived, and the trial court erred by denying the plea to the jurisdiction. We sustain Hidalgo County's second issue.

**V.    CONCLUSION**

We reverse and render a judgment of dismissal for want of jurisdiction.

GINA M. BENAVIDES
Justice

Delivered and filed on the
22nd day of July, 2021.