Denita SANDERS, Appellant,

v.

BLOCKBUSTER, INC., Appellee.

No. 09–03–037 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Oct. 2, 2003.

Decided Feb. 5, 2004.

Lori A. Reilly, Edward T. Joyce, Arthur W. Aufmann, Edward T. Joyce & Associates, P.C., Chicago, IL, Matt E. Rubin, Williams, Birnberg & Andersen, LLP, Houston, Williams J. Harte, Williams J. Harte, Ltd., Aron D. Robinson, Law Office of Aron D. Robinson, Christopher V. Langone, Mark T. Lavery, Joel D. Dabisch, The Langone Law Firm, Robert F. Lisco, Law Offices of Robert F. Lisco, PC, Lance A. Raphael, The Consumer Advocacy Center, PC, Paul M. Weiss, Freed & Weiss, LLC, Chicago, IL, for appellant.

D. Allan Jones, Orgain, Bell & Tucker, Beaumont, Robert C. Walters, Thomas S. Leatherbury, Michael L. Raiff, Vinson & Elkins, LLP, Dallas, for appellees.

Before McKEITHEN, C.J., DON BURGESS and GAULTNEY, JJ.

## OPINION

DON BURGESS, Justice.

This appeal involves the settlement of a national consumer class action against Blockbuster, Inc. There have been two prior appeals in this cause—*Peters v. Blockbuster, Inc.,* 65 S.W.3d 295 (Tex. App.-Beaumont 2001, no pet.) where we determined the trial court did not abuse its discretion in certifying a settlement class; and *Johnson v. Scott,* 113 S.W.3d 366 (Tex. App.-Beaumont 2003, pet. filed) where we affirmed the class action settlement in part and remanded the case for further proceedings. In this third appeal, Sanders attacks two orders entered by the trial court on December 23, 2002:(1) a declaratory judgment confirming that all members of the Scott class are barred from asserting any further claims against Blockbuster based on its past or present extended viewing fee ("EVF") policies and (2) a permanent injunction enjoining the class members from prosecuting these claims elsewhere. Sanders raises five issues.

In her first issue, Sanders contends this appeal should have been consolidated with

an earlier appeal. We previously considered and denied Sanders's motion to consolidate, and need not revisit that decision. Issue one is overruled.

■ Central to issues two, three, and four is Sanders's contention that the trial court reinterpreted or adopted a new and impermissibly broad reading of the class action settlement agreement by finding it included post-April 1, 2001 claims. Issue two contends, given the trial court's "new interpretation" of the class settlement, the trial court abused its discretion in approving the class settlement as fair, adequate and reasonable and further contends class counsel is inadequate. Issue three argues class notice was deficient in light of the trial court's "new interpretation." Issue four asserts the trial court erred in "reinterpreting" the class settlement to include post-April 1, 2001 claims.

To determine whether any of these three issues has merit, we first must consider whether, as Sanders contends, the trial court "reinterpreted" the class settlement to impermissibly include post-April 1, 2001 claims.

Sanders argues the trial court's holding in the declaratory judgment that the *Scott* settlement applies to post-April 1, 2001 claims must be rejected for a "simple" reason, namely the class definition. The *Scott* settlement class is defined as "[a]ll members of Blockbuster who incurred an extended viewing fee ("EVF") or nonreturn fee between January 1, 1992, and April 1, 2001."[1] Without citing supporting case authority, Sanders maintains that the class definition precludes application of the settlement to post-April 1, 2001 transactions.

Blockbuster contends Sanders has confused two entirely separate sections of the agreement: (1) the section that defines the class and (2) the section that defines the claims being released by the class. We agree. The "class definition" section (Paragraph II.A. of the Settlement Agreement) provides that the class consists of all Blockbuster members who paid EVFs between January 1, 1992 through April 1, 2001. But the date range contained in this section defines only who is in the class, not what claims are released. ·

On the other hand, the description of what claims are released appears in an entirely different section of the settlement agreement. In Paragraph II. F., entitled "Releases," subparagraph b defines "Released Claims" as:

[A]ny and all claims or causes of action of any nature whatsoever, including but not limited to any claim for violations of federal, state, or other law (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), and also including "Unknown Claims" (as defined in subparagraph c.), that have been or could have been asserted against the Released Parties in the Litigation or any other complaint, action, or litigation in any other court or forum based upon, or in any way relating to Blockbuster's extended viewing fee policies, amounts charged for extended viewing, policies regarding lost or unreturned videos or any other rental items, amounts charged for lost or unreturned videos or any other rental items, or any other Blockbuster policies dealing with, referring to, involving, or related to extended viewing fees. . . .

---

1. Specifically excluded from the class are (1) members of the settlement class in *Herrada v. Blockbuster Inc.* [a Michigan case] and (2) all currently serving judges and justices of the state of Texas and their spouses and anyone within three degrees of consanguinity from those judges and justices and their spouses.

In its final declaratory order granting Blockbuster's motion to enforce judgment and settlement agreement, the trial court determined that "[t]he definition of 'Released Claims' encompasses any claims attacking Blockbuster's EVF policies, including Blockbuster's 'per period' EVF policy that Blockbuster was using at the time of the settlement and continues to use today."[2] We agree. Supporting the trial court's decision is the plain language of the Settlement Agreement defining "Released Claims," i.e. "**[A]ny and all claims or causes of action of any nature whatsoever,** ... that have been or could have been asserted against the released Parties **or any other complaint, action, or litigation in any other court or forum based upon, or in any way relating to Blockbuster's extended viewing fee policies,....**" (Emphasis added). This definition clearly identifies the released claims as any and all claims by the class attacking Blockbuster's EVF policies.

▓ In addition to the plain language of the settlement documents, support is found else where for the trial court's determination. As explained in *In Re Prudential Ins. Co. of Am. Sales Practice Litigation*, 261 F.3d 355 (3d Cir.2001), permitting class members to prosecute claims based on the same allegations as claims released in another case "would allow an end run" around the settlement and "seriously undermine the possibility for settling any large, multi-district class action." *In Re Prudential*, 261 F.3d at 366–67. The *Prudential* court also noted "[i]t is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself." *In Re Prudential*, 261 F.3d at 366 (citing *TBK Partners, Ltd. v. Western Union Corp.* 675 F.2d 456, 460 (2d Cir.1982)). The *Prudential* Court also explained that the important policy interest of judicial economy was served by "permitting parties to enter into comprehensive settlements that 'prevent relitigation of settled questions at the core of a class action.'" *Id.*

Sanders attempts to distinguish *In Re Prudential* by arguing that, unlike *Prudential*, the instant case is involved with transactions based on a "different nucleus of operative fact." Neither party cites a Texas case either applying or rejecting the *Prudential* rational, or otherwise analyzing broad form releases in class actions[3] and

---

**2.** As the trial court further found: "Blockbuster customers who were not included in the Settlement Class are beyond the scope of the release. This includes customers who opted out of the *Scott* settlement class, customers who joined Blockbuster after April 1, 2001, and customers who joined before April 1, 2001 but did not incur any EVFs before that date."

**3.** The Texas Supreme Court has approved broad form releases. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex.2000)(holding broad release of claims attributable to professional services extended to malpractice claims even though recitals primarily addressed unpaid fees.). An earlier decision, *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931 (Tex.1991), had required that general releases be narrowly construed and that the releasing instrument must "mention" the claim to be released. *Brady*, 811 S.W.2d at 938. "Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged." *Brady*, 811 S.W.2d at 938 (citation omitted). However, the *Keck* Court distinguished *Brady*, noting it was related to a specific loan transaction and further did not forbid broad form releases. *Keck*, 20 S.W.3d at 698. "*Brady* simply holds that the release must 'mention' the claim to be effective. It does not require that the parties anticipate and identify each potential cause of action relating to the release's subject matter." *Id.* (citations omitted).

386

we have found none. However, we find guidance from other jurisdictions as well as Texas case law.

■■■ The principle of *res judicata* applies to class action settlements. *See Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74, 76 (N.D.Tex.1979)(holding that class claims of discriminatory hiring practices were barred by previous judgment and class settlement on the same practices because both suits involved the same cause of action). "*Res judicata,* or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). In *Barr,* the Texas Supreme Court adopted the "transactional" approach of the RESTATEMENT (SECOND) OF JUDGMENTS § 24 to *res judicata* questions. *Id.* at 631. "[A] final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Id.*

■■■ A "transaction or series of connected transactions" "connotes a natural grouping or common nucleus of operative facts." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (1982). Whether a transaction or series of transactions exist is to be determined "pragmatically, 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.'" *Barr,* 837 S.W.2d at 631 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2)).

■■■ Where there is a legal relationship, such as under a lease or contract, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata. *See Weiman v. Addicks–Fairbanks Road Sand Co.*, 846 S.W.2d 414, 419 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (finding existence of core facts common to all claims regarding continued operation of landfill after lease expired; combining claims would be consistent with achieving comprehensive conclusion to business relationship).

Here there is a series of connected transactions that arise from the same legal relationship. Claims by the class for post-April 1, 2001 EVFs arise from the same "nucleus of operative facts"—the rental of movies, followed by the assessment of EVFs pursuant to the same EVF policies—as claims for pre-April 1, 2001 EVFs. The same policies are involved; the same parties are involved.

Other jurisdictions have considered claims for "new incidents" arising from an ongoing policy or program. In *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275 (2d. Cir.2000), the court found "new incidents" alleged in a second suit over a challenged sick leave policy were barred by *res judicata* because the policy had been adjudicated by the prior settlement and consent judgment and these "new incidents" were part of the same "transaction" for purposes of res judicata. *Monahan,* 214 F.3d at 289–290, 293. In *Huck v. Dawson,* 106 F.3d 45 (3d Cir.1997), the court rejected the plaintiff's contention that he could pursue claims for continued denial of access to sea ramps after a prior judgment on claims regarding similar denials because that conduct "is precisely the same conduct challenged in the earlier suit." *Huck,* 106 F.3d at 49–50.

Thus, in light of the plain language of the settlement documents and analogous case law, we find that the trial court did not "broaden" or "reinterpret" the settle-

ment agreement. Instead, the trial court properly determined that "[t]he definition of 'Released Claims' encompasses any claims attacking Blockbuster's EVF policies, including Blockbuster's 'per period' EVF policy that Blockbuster was using at the time of the settlement and continues to use today[,]" and that "[t]he Settlement Class members are therefore barred from challenging Blockbuster's EVF policies in a second suit. The Settlement Class members may not challenge the released policies—including the 'per period' EVF policy—in any litigation, even for EVFs incurred after April 1, 2001."

For Sanders to prevail on either issue two, three, or four, we would have had to determine that the trial court reinterpreted or broadened the *Scott* class action settlement agreement. As we did not, we overrule issues two, three and four.

 In her final issue, Sanders contends the trial court erred in issuing the anti-suit injunction. However, TEX R. CIV. P. 308 provides that a trial court "shall cause its judgment and decrees to be carried into execution. . . ." Under Rule 308, a trial court is vested with both the authority and affirmative duty to enforce and to protect its orders and decrees. *In re Crow–Billingsley Air Park, Ltd.*, 98 S.W.3d 178, 179 (Tex.2003); *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 889 (Tex. App.-Houston [14th Dist.] 2000, pet. dism'd w.o.j.) The court's powers of enforcement include the issuance of anti-suit injunctions to prevent "relitigating the identical issues in a foreign court." *Bridas Corp.*, 16 S.W.3d at 890. An anti-suit injunction is appropriate in the context of protecting a class action settlement from attack in other jurisdictions. *Kortebein v. American Mut. Life Ins. Co.*, 49 S.W.3d 79, 88–89 (Tex.App.-Austin 2001, pet. denied). We overrule Sanders's fifth issue.

For the foregoing reasons, we overrule all of Denita Sanders's issues and arguments and affirm the trial court's declaratory order and permanent injunction enforcing judgment.

AFFIRMED.