**NU–WAY ENERGY CORPORATION,**
**Appellant**

v.

**Billy R. DELP, Jr., Appellee.**

**No. 10–05–00065–CV.**

Court of Appeals of Texas,
Waco.

Sept. 6, 2006.

Stefanie Martin Klein, Neligan Tarpley Andrews & Foley LLP, Dallas, Frank Gilstrap, Hill Gilstrap, Arlington, for Appellant/Relator.

Mack Ed Swindle, Whitaker Chalk Swindle & Sawyer LLP, Ft. Worth, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Nu–Way Energy Corporation filed suit against Billy R. Delp, Jr. to collect on a $2 million judgment. Nu–Way sought a turnover order for assets held in Delp's individual retirement account, including a 1998 judgment rendered in favor of the IRA, or alternatively garnishment of the proceeds of that judgment. Delp responded that the IRA, the judgment, and the proceeds of the judgment are exempt from creditors because the IRA was confirmed as an exempt asset in his bankruptcy proceedings and the judgment was obtained with proceeds from the IRA. The trial court rendered judgment in Delp's favor.

Nu–Way presents ten issues challenging the court's findings and conclusions that the IRA is exempt and that the judgment and its proceeds are exempt and challenging the manner in which the court awarded attorney's fees to Delp. We will reverse and remand.

## Background

Delp was president of Nu–Way in 1991 when he filed a Chapter 11 bankruptcy. During the course of the bankruptcy proceedings, Nu–Way obtained a judgment against Delp in excess of $2 million for breach of fiduciary duty. Because of the nature of Delp's liability, the judgment is a non-dischargeable debt.

Delp listed the IRA in his bankruptcy schedule as an exempt asset. Neither Nu–Way nor any other creditor objected to the designation of the IRA as an exempt asset.

Before confirmation of the reorganization plan in Delp's bankruptcy, Delp executed an agreement with First Financial Resolution Enterprises, Inc. ("First Financial"). Under this agreement, Delp agreed to purchase: (1) an unsecured debt evidenced by a note made by Economy Oil Company in favor of the Federal Asset Management Company ("FAMCO") in the original principal sum of $660,567; and (2) a secured claim against Economy in the amount of $350,000 held by FAMCO and secured by 175,000 units in FFP Partners, L.L.P. First Financial agreed to release Delp from a personal guaranty he had made in support of a $1.6 million note Economy had executed in favor of Texas American Bank.[1]

Although Delp initially agreed to purchase both the unsecured debt and the secured claim, a company owned by his son purchased the unsecured debt. Delp withdrew $250,000 from his IRA to purchase the secured claim. First Financial transferred the secured claim by executing an assignment in favor of "Bank One, Trustee for Billy R. Delp, Jr. IRA."[2] At the same time, First Financial released

---

**1.** Both the unsecured debt and the secured claim arose from Economy's own bankruptcy. These claims originated with the $1.6 million note. This note was secured by the 175,000 FFP units and was further supported by the personal guarantees of Delp and of John Harvison, who is an officer and director of Nu–Way and Economy. The bankruptcy court divided this note into the $350,000 secured claim and a $1.3 million unsecured debt. The Economy bankruptcy plan called for the $1.3 million debt to be halved. Hence, Economy executed the $660,567 note in favor of FAMCO.

**2.** Although the assignment was to Bank One, First Financial's endorsement on the original $1.6 million makes the note payable to Delp in his individual capacity.

Delp from any further liability on his personal guaranty.

Litigation ensued between Economy and Delp regarding the substance of the agreement between them. Delp believed that the transaction conveyed the FFP units to his IRA, while Economy contended that Delp or his IRA acquired only a security interest in the units. A certificate of ownership of the FFP units was placed in the registry of the court pending the resolution of the litigation. The trial court in the Economy suit rendered judgment that Delp's IRA held the note, secured by the FFP units, and that Economy owned the units themselves. The judgment ordered Economy to pay $350,000 to the Delp IRA and decreed that this sum, if not paid, would be satisfied from the FFP units.

Nu–Way contends that the IRA lost its exempt status because Delp withdrew funds from the IRA for his own benefit. Nu–Way primarily seeks the turnover of the Economy judgment or to garnish the proceeds of that judgment, which Economy has now satisfied. In the alternative, Nu–Way seeks turnover of sufficient funds in the IRA to satisfy its judgment. Delp contends that Nu–Way cannot challenge the exempt status of his IRA because Nu–Way did not challenge its exempt status during his bankruptcy proceedings or during the Economy litigation. Delp also suggests that because the Economy judgment was rendered in favor of his IRA, neither the judgment nor its proceeds can be reached by Nu–Way to satisfy its judgment against Delp individually.

The court made numerous findings of fact and conclusions of law in this case. The court primarily found and concluded

that Nu–Way's claims are barred by res judicata and collateral estoppel. The court also found and concluded that Nu–Way cannot reach the Delp IRA because Nu–Way did not object to Delp's assertion in bankruptcy court that the IRA was exempt.

Despite these findings and conclusions, the court went further and addressed the merits of Nu–Way's claims. The court concluded among other things that: (1) Nu–Way cannot have turnover of the Economy judgment because that judgment was rendered in favor of the Delp IRA rather than Delp in his individual capacity;[3] (2) the Economy judgment is exempt from prepetition creditors because it is the property of the IRA, which was declared exempt in Delp's bankruptcy proceedings; and (3) Nu–Way failed to prove that the IRA lost its exempt status at any time thereafter.

The court also found that Nu–Way committed a breach of contract (the bankruptcy plan) by seeking to recover an asset held by the Delp IRA. The court thus awarded Delp trial attorney's fees of $385,925 and appellate attorney's fees of as much as $85,000. The court ordered that these fees be paid directly to Delp's attorneys.

### Standard of Review

The parties tried this suit on a joint stipulation of the pertinent facts. *See* Tex.R. Civ. P. 263.

An agreed statement of facts under rule 263 is similar to a special verdict; it is the parties' request for judgment under the applicable law. The only issue on

---

**3.** For example, in Conclusion of Law No. 76, the court recites:

The *turnover* relief requested may not be granted either. It is Delp IRA that has the claim against the assets in the *Economy* regis-

try. Delp IRA is a juridically distinct entity from Delp. Therefore, its rights as a judgment claimant in the *Economy* case cannot be adjudicated here, certainly not without its joinder in this litigation.

appeal is whether the trial court properly applied the law to the agreed facts. The appellate court is limited to those facts unless other facts are necessarily implied from the express facts in the statement. In an appeal of an "agreed" case, there are no presumed findings in favor of the judgment, and the pleadings are immaterial.

Because the issue on appeal is a pure question of law, the appellate court performs a de novo review. A de novo review is less deferential than ordinary reviews because a trial court has no discretion in deciding what the law is or in properly applying it.

*C & G, Inc. v. Jones,* 165 S.W.3d 450, 453 (Tex.App.-Dallas 2005, pet. denied) (quoting *State Farm Lloyds v. Kessler,* 932 S.W.2d 732, 735 (Tex.App.-Fort Worth 1996, writ denied)).

### Mootness

■ Delp contends that Nu–Way's claims are now moot because the Economy judgment has been satisfied. Nu–Way concedes that its garnishment claim is moot. However, Nu–Way responds that its claim for turnover relief is not moot because it is entitled to turnover of the proceeds of the judgment and because it seeks turnover of as much of the other funds in the Delp IRA which are determined to be non-exempt as necessary to satisfy Nu–Way's judgment against Delp.

■ "A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 642 (Tex.2005).

Here, as Nu–Way concedes, no further controversy exists as to garnishment of the judgment debt owed to the Delp IRA by Economy because the judgment has been paid. Accordingly, we dismiss as moot Nu–Way's sixth issue, which challenges the trial court's denial of garnishment relief.

However, because Nu–Way essentially seeks turnover of the entirety of the Delp IRA to satisfy Nu–Way's judgment, the remainder of Nu–Way's claims are not moot.

### Res Judicata

Nu–Way contends in part of its third issue that the court erred by concluding that events during the bankruptcy proceedings preclude Nu–Way from pursuing its claims in this suit under the doctrine of res judicata, collateral estoppel, or a similar theory. Nu–Way contends in its fourth issue that the court erred by concluding that the Economy judgment precludes Nu–Way from recovering turnover of that judgment under principles of res judicata, collateral estoppel, or a similar theory.

The trial court concluded that (1) Nu–Way's failure to object to the scheduling of the Delp IRA as an exempt asset in the bankruptcy proceedings, (2) the confirmation of the bankruptcy plan, and (3) the rendition of judgment in the Economy litigation all bar Nu–Way's claims under the doctrine of res judicata.

■ The conclusion that Nu–Way's claims are barred by events during the bankruptcy proceedings is governed by federal law. *See John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 287 (Tex.2002); *Dallas Sales Co. v. Carlisle Silver Co.,* 134 S.W.3d 928, 931 (Tex.App.-Waco 2004, pet. denied). A claim of res judicata under federal law consists of four elements: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same cause of action must be involved in both cases.

*Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 386 (5th Cir.2000); *SMI/USA, Inc. v. Profile Techs., Inc.*, 38 S.W.3d 205, 211 (Tex.App.-Waco 2001, no pet.).

 Even if these four elements are present however, res judicata will not bar a subsequent action unless the plaintiff "could and should have brought its ... claims in the former proceedings." *Osherow*, 200 F.3d at 388. To resolve this question, "we consider whether and to what extent [Nu–Way] had actual or imputed awareness" before the confirmation hearing that Delp had caused funds to be withdrawn from his IRA for the acquisition of the secured claim against Economy. *See id.*

Delp contends that the allegations throughout the course of the parties' litigation in state and federal court show that "Nu–Way obviously distrusted Delp all along the way." Thus, Delp contends in effect that Nu–Way should have known he might withdraw funds from his IRA and should have conducted periodic examinations of Delp under Bankruptcy Rule 2004(a) to determine whether he was engaging in such conduct.

Delp filed his bankruptcy schedules in November 1991. The creditors' meeting was conducted in December 1991, and thus, the deadline for filing objections to the claimed exemptions listed in Delp's bankruptcy schedules was in January 1992. *See* FED. R. BANKR.P. 4003(b). Delp did not acquire the secured claim against Economy until December 1992. The bankruptcy court signed an order confirming a plan of reorganization in April 1993. The first indication in the record that Nu–Way had some knowledge that Delp may have been involved in a transaction regarding the secured claim against Economy is a deposition subpoena served on Delp's son in September 1993 in connection with the adversary proceeding. Delp's son responded by seeking a protective order from the bankruptcy court. When a similar subpoena was served on Delp's attorney, the attorney filed a motion for protective order, as did Delp and his wife. A federal magistrate ordered discovery of the documents sought in January 1994.

Nu–Way contends that it could not have challenged the propriety of the acquisition of the secured claim against Economy before entry of the confirmation order because it did not learn of the acquisition until afterward. The record supports Nu–Way's contention, and Delp does not point to any contrary evidence in the record nor otherwise contradict Nu–Way's assertion that it did not learn of the acquisition until after entry of the confirmation order.

There is nothing in the record to indicate that Nu–Way "had actual or imputed awareness" before the confirmation hearing that Delp had caused funds to be withdrawn from his IRA for the acquisition of the secured claim against Economy. *See Osherow*, 200 F.3d at 388. Accordingly, the bankruptcy proceedings do not bar Nu–Way's present suit under the federal-law doctrine of res judicata. *Id.*

 The trial court's conclusion that rendition of judgment in the Economy litigation bars Nu–Way's claims is governed by state law. A claim of res judicata under Texas law consists of three elements: (1) a final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second suit based on claims actually litigated in the first suit or claims which should have been litigated in the first suit. *See State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex.2001) (per curiam); *Nelson v. Williams*, 135 S.W.3d 202, 206 (Tex.App.-Waco 2004, pet. denied); *Steger v. Muen-*

*ster Drilling Co.,* 134 S.W.3d 359, 368 (Tex.App.-Fort Worth 2003, pet. denied).

The Supreme Court has adopted a transactional approach to determine whether a particular claim should have been pursued in prior litigation. *See State & County Mut. Fire Ins. Co.,* 52 S.W.3d at 696; *Sanders v. Blockbuster, Inc.,* 127 S.W.3d 382, 386 (Tex.App.-Beaumont 2004, pet. denied); *Compass Exploration, Inc. v. B–E Drilling Co.,* 60 S.W.3d 273, 278 (Tex.App.-Waco 2001, no pet.). This approach "provides that a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.,* 837 S.W.2d 627, 631 (Tex.1992) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)). This determination "requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action." *Id.* at 630; *accord Loy v. Harter,* 128 S.W.3d 397, 406 (Tex.App.-Texarkana 2004, pet. denied); *Kothmann v. Cook,* 113 S.W.3d 471, 474–75 (Tex.App.-Amarillo 2003, no pet.).

What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982) (quoted by *Barr,* 837 S.W.2d

at 631); *accord Sanders,* 127 S.W.3d at 386; *Compass Exploration,* 60 S.W.3d at 278.

A review of the jury charge in the Economy suit reveals that the following matters were at issue in that litigation: (1) whether Delp breached his fiduciary duty as Economy's president and director by acquiring the secured claim from FFRE or by causing the unsecured debt to be assigned to his son's company; (2) whether any negligence on Delp's part in connection with these transactions was a proximate cause of damages to Economy; (3) whether Delp committed fraud against Economy; (4) whether Economy had waived its claims; and (5) whether Delp and/or the Delp IRA acquired ownership of the FFP units from FFRE or a security interest in those units.[4]

Conversely, Nu–Way's suit against Delp seeks turnover of the Economy judgment or garnishment of its proceeds, or in the alternative, turnover of sufficient funds in the IRA to satisfy Nu–Way's judgment. Nu–Way also seeks declaratory relief in the form of a judgment declaring that Delp's use of funds from his IRA to purchase the secured claim caused his entire IRA to lose its exempt status under federal law or, alternatively, caused the judgment itself to lose its exempt status notwithstanding its being held by the Delp IRA.

The claims in both lawsuits revolve around the transaction in which the Delp IRA obtained the secured claim against Economy. The Economy suit focused on whether Delp's conduct in this transaction violated any legal obligations owed to Economy. Conversely, Nu–Way's suit fo-

---

**4.** The jury found against Economy on its claims and determined that Delp and/or the Delp IRA acquired ownership of the FFP units rather than a security interest in those units. The trial court rendered judgment notwithstanding the verdict on this latter issue, stating in Conclusion of Law No. 69 "that the Delp IRA owns a secured claim for $350,000, with the FFP Units ... pledged as collateral."

cuses on whether Delp's use of funds from his IRA to obtain the secured claim *and release* caused his IRA or at least the Economy judgment to lose its exempt status.

Applying the pragmatic approach adopted by the Supreme Court in *Barr*, we conclude that Nu–Way's claims are not claims which should have been litigated in the Economy suit for purposes of res judicata. Although the facts of both suits are "related in time [and] origin," they are not "related" by the "motivation" of the respective plaintiffs. *See Barr*, 837 S.W.2d at 631; *Sanders*, 127 S.W.3d at 386; *Compass Exploration*, 60 S.W.3d at 278; RESTATEMENT (SECOND) OF JUDGMENTS § 24(2).

Economy had no motivation to litigate the issue of whether Delp's use of funds from his IRA to purchase the secured claim and release rendered his IRA or part of it no longer exempt under federal law. Conversely, Nu–Way has no motivation to litigate the issue of whether Delp's conduct in purchasing the secured claim violated any fiduciary duties he owed Economy or otherwise caused Economy to suffer compensable injury. *See Heard v. Moore*, 101 S.W.3d 726, 729 (Tex.App.-Texarkana 2003, pet. denied) (plaintiff's suit against defendants not barred by res judicata even though defendants as third-party plaintiffs obtained default judgment against third-party defendant in same suit for contribution and indemnity because plaintiff "was procedurally neutral" as to the claim against the third-party defendant and had no obligation "to inject herself" into that dispute); *In re J.G.W.*, 54 S.W.3d 826, 833 (Tex.App.-Texarkana 2001, no pet.) (father's claims against ex-wife and her new husband for intentional infliction of emotional distress, interference with child custody, and civil conspiracy which could have been litigated in prior suit to modify custody and support provisions of divorce decree not barred by res judicata because these claims "would only be ancillary" to the modification proceeding); *Cain v. Cain*, 746 S.W.2d 861, 863 (Tex. App.-El Paso 1988, writ denied) (former wife's turnover action for husband's retirement payments not barred by res judicata even though she did not seek turnover relief in prior suit to enforce divorce decree).

### Collateral Estoppel

██ Under both federal and state law, a claim of collateral estoppel has three elements: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Kenedy Mem'l Found.*, 90 S.W.3d at 288 (quoting *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994)); *accord Fiallos v. Pagan–Lewis Motors, Inc.*, 147 S.W.3d 578, 584 (Tex.App.-Corpus Christi 2004, pet. denied).

██ Collateral estoppel is more narrow than res judicata because it precludes only the relitigation of issues which were actually litigated in a prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985); *Fiallos*, 147 S.W.3d at 584; *Tex. Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 264 (Tex.App.-Texarkana 2002, no pet.); *McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 680 (Tex.App.-Waco 1998, pet. denied). "Thus, unlike the broader res judicata doctrine, collateral estoppel analysis does not focus on what could have been litigated, but only on what was actually litigated and essential to the judgment." *Van Dyke*, 697 S.W.2d at 384; *Tex. Capital Sec. Mgmt.*, 80 S.W.3d at 264; *accord McRae Exploration*, 962 S.W.2d at 680. Whether

collateral estoppel applies to a particular judgment is a question of law. *McRae Exploration,* 962 S.W.2d at 680.

■ Here, as demonstrated in the discussion regarding Delp's state-law res judicata claim, the Economy litigation and the Nu–Way litigation involve different issues. True, the Economy litigation resolved the issue of whether Delp or the Delp IRA "owns" the secured claim against Economy. However, this is not legally relevant to Nu–Way's claims in the present suit because turnover relief is available to reach property in the judgment debtor's possession or property subject to his control. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(b)(1) (Vernon Supp.2006); *Gerdes v. Kennamer,* 155 S.W.3d 541, 546 (Tex.App.-Corpus Christi 2004, no pet.); *Bay City Plastics, Inc. v. McEntire,* 106 S.W.3d 321, 325 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). Therefore, because the Economy litigation and the Nu–Way litigation involve different issues, it cannot be said that Nu–Way's suit is barred by collateral estoppel.

### Waiver

■ The trial court also concluded that Nu–Way waived its right to challenge the exempt status of the Delp IRA because Nu–Way did not file an objection to Delp's bankruptcy schedule identifying the IRA as exempt. As indicated above however, Nu–Way had no basis to raise such an objection until after the time for filing objections had passed. *See* FED. R. BANKR.P. 4003(b). Therefore, the court erred by concluding that Nu–Way had waived its right to challenge the exempt status of the IRA.

Accordingly, we sustain Nu–Way's third issue in part and Nu–Way's fourth issue in its entirety.

### Exempt Status of IRA Under Bankruptcy Plan

■ Nu–Way also contends in its third issue that the bankruptcy plan "does not preclude Nu–Way from collecting its judgment against any currently non-exempt asset, even if such asset is traceable to proceeds of the IRA." Nu–Way contends in its fifth issue that the court erred by concluding that "no asset traceable to the [Delp] IRA ... will ever be available to satisfy Nu–Way's judgment."

In particular, the trial court concluded that the bankruptcy plan is "a binding and enforceable contract" and thus the identification of the Delp IRA in the plan as an exempt asset means "Nu–Way cannot ... raid [the] Delp IRA for satisfaction of its prepetition claims against Delp." Thus, the court concluded that Nu–Way breached this "contract" by attempting to enforce its lien against an asset held in the name of the Delp IRA.

■ Under section 522(b) of the Bankruptcy Code, a debtor may choose to withdraw certain property from his bankruptcy estate using exemptions provided by either state or federal law, unless the debtor's state "opts out" of the federal exemptions. *See* 11 U.S.C.A. § 522(b) (West Supp. 2006); *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991). "Texas is part of a decided minority of states that have not opted out." *In re Brown,* 299 B.R. 425, 427 (Bankr. N.D.Tex.2003).[5]

Here, Delp chose to claim the exemptions provided by Texas law. Thus, he

---

5. If the debtor's state "opts out," then the debtor is limited to the exemptions provided by state law. *See Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991).

identified the Delp IRA as an exempt asset under section 42.0021(a) of the Property Code. The version of section 42.0021(a) in effect at the time of Delp's bankruptcy provided:

> In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under any stock bonus, pension, profit-sharing, or similar plan, including a retirement plan for self-employed individuals, and under any annuity or similar contract purchased with assets distributed from that type of plan, and under any retirement annuity or account described by Section 403(b) of the Internal Revenue Code of 1986, and under any individual retirement account or any individual retirement annuity, including a simplified employee pension plan, is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986. A person's right to the assets held in or to receive payments, whether vested or not, under a government or church plan or contract is also exempt unless the plan or contract does not qualify under the definition of a government or church plan under the applicable provisions of the federal Employee Retirement Income Security Act of 1974. If this subsection is held invalid or preempted by federal law in whole or in part or in certain circumstances, the subsection remains in effect in all other respects to the maximum extent permitted by law.

Act of May 27, 1989, 71st Leg., R.S., ch. 1122, § 1, 1989 Tex. Gen. Laws 4627, 4627–28 (amended 1995) (current version at Tex. Prop.Code Ann. § 42.0021(a) (Vernon Supp.2006)) (hereinafter, "section 42.0021").

Thus, under the law then in effect, Delp claimed an exemption for "the assets held in ... [an] individual retirement account." *See id.* At that time, "the assets held" in the Delp IRA consisted of funds in the amount of $1,118,138.

Under section 522(c) of the Bankruptcy Code, such funds are "not liable during or after the case for any [prebankruptcy] debt" with certain exceptions not applicable here. *Id.* § 522(c) (West 2004 & Supp. 2006); *see S & C Home Loans, Inc. v. Farr (In re Farr),* 278 B.R. 171, 176–77 (9th Cir. BAP 2002); *In re Hyde,* 334 B.R. 506, 513 (Bankr.D.Mass.2005); *Lowe v. Yochem (In re Reed),* 184 B.R. 733, 738 (Bankr.W.D.Tex.1995). "The legislative history of this section also shows that it was enacted to insulate exempt property from any nondischargeable prepetition debts which are not listed as exceptions." *S & C Home Loans,* 278 B.R. at 177.

The issue here is whether any portion of the funds in the Delp IRA lost their exempt status under the Bankruptcy Code because funds from that account were used to acquire the secured claim against Economy and the release of Delp's personal guaranty. It is undisputed that the secured claim would not have been an exempt asset if Delp had acquired it before filing the bankruptcy petition. *See Leibman v. Grand,* 981 S.W.2d 426, 435 (Tex. App.-El Paso 1998, no pet.) (Texas law does "not provide an exemption for currency, checks, or negotiable instruments").

Section 42.0021(c) formerly provided:

> Amounts distributed from a plan or contract entitled to the exemption under Subsection (a) are not subject to seizure for a creditor's claim for 60 days after the date of distribution if the amounts qualify as a nontaxable rollover contribution under Section 402(a)(5), 403(a)(4), 403(b)(8), or 408(d)(3) of the Internal Revenue Code of 1986.

Act of May 27, 1989, 71st Leg., R.S., ch. 1122, § 1, 1989 Tex. Gen. Laws 4627, 4628 (amended 1995) (current version at TEX. PROP.CODE ANN. § 42.0021(c) (Vernon Supp. 2006)).

$250,000 was withdrawn from the Delp IRA to acquire the secured claim and release. These proceeds would remain exempt under section 42.0021(c) if they were used as a rollover contribution for another qualifying account. *See id.* However, they were not. Rather, the proceeds were used to purchase a non-exempt asset. *See Leibman,* 981 S.W.2d at 435.

■ Delp cites *Lowe* for the proposition "that a postpetition change in the character of property properly claimed as exempt will *not* change the status of that property, relying on the principle that once property is exempt, it is exempt forever and nothing occurring postpetition can change that fact." *Lowe,* 184 B.R. at 737. We fully agree, insofar as this proposition goes. But the true meaning of this statement is that "[p]roperty which is claimed as exempt is deemed no longer property of the [bankruptcy] estate, and its subsequent transformation into proceeds which would be nonexempt under state law does not bring these proceeds back into the bankruptcy estate." *In re Walston,* 190 B.R. 855, 859 (Bankr.S.D.Ill.1996); *see also Lowe,* 184 B.R. at 738 ("The practical implication is that such property is forever protected from the claims of pre-petition creditors, and is essentially removed from the bankruptcy process.").

With this understanding, the application of this principle in cases like Delp's can be readily seen. For example, in *S & C Home Loans,* the debtor had claimed the $100,000 homestead exemption allowed by California law. 278 B.R. at 173. S & C Home Loans obtained a nondischargeable judgment against the debtor for fraud. S & C sought to satisfy its judgment lien against the nonexempt equity in the debtor's residence, which was shown to have a fair market value significantly in excess of the combined value of the exemption and the mortgage lien secured by the residence. *Id.* at 173–74. The bankruptcy appellate panel held that S & C's judgment lien could reach all but the exempt portion of the debtor's interest in the homestead. *Id.* at 181.

In a case with similar facts, a Massachusetts bankruptcy court likewise held that the holder of a nondischargeable claim against the debtor could enforce its rights against the debtor's homestead to the extent "the Debtor had equity in the Property over and above the amount of his claimed exemption and any non-avoidable liens." *Hyde,* 334 B.R. at 513.

Conversely, in *Lowe* and similar cases, the bankruptcy trustee sought to bring into the bankruptcy estate assets which were exempt when the bankruptcy petition was filed but which had been converted into nonexempt assets.

In *Lowe,* the debtor sold his exempt homestead (a ranch) for cash and a note during the pendency of his bankruptcy. After discharge, the trustee brought an adversary proceeding alleging that the note had become property of the bankruptcy estate after six months because it was a part of the proceeds from the sale of the homestead. *See Lowe,* 184 B.R. at 735; *see also* TEX. PROP.CODE ANN. § 41.001(c) (Vernon Supp.2006) (proceeds from sale of homestead are exempt for six months after sale). The bankruptcy judge rejected this assertion:

Nothing in section 522(c) even vaguely suggests that, as a precondition to enjoying the protections of that provision, the debtor must maintain the exempt character of the property. If the debtor decides, as part of his fresh start, to sell

the house, buy a Winnebago, and travel around the country from campground to campground with his wife and his dog, the statute appears to place no impediment in his path. True enough, the Winnebago may not be exempt from obligations he incurs after his discharge (depending on state law), but it should not be vulnerable to the satisfaction of any of the debtor's prepetition obligations. Were the rule otherwise, then estates could be reopened to administer such proceeds at virtually any time, robbing bankruptcy administration of any sort of meaningful finality, and robbing the bankruptcy discharge of its efficacy.

We join the majority of courts that have ruled on this issue, concluding that a postpetition transformation of exempt property into a form of property which would not be exempt under state law does not return the property to the estate.

*Lowe,* 184 B.R. at 738; *accord In re Konnoff,* 341 B.R. 28, 32 (Bankr.D.Ariz.2006); *Walston,* 190 B.R. at 859.

■ However, the bankruptcy judge in each of these cases explicitly noted that, even though these proceeds could not be reached by the bankruptcy trustee, the proceeds were not exempt from postpetition creditors. *See Konnoff,* 341 B.R. at 32 n. 23; *Walston,* 190 B.R. at 859; *Lowe,* 184 B.R. at 738 n. 7. For our purposes, a prepetition creditor holding a nondischargeable judgment lien has the same right to attach non-exempt assets acquired by a debtor after discharge as a postpetition creditor. *See S & C Home Loans,* 278 B.R. at 181; *Hyde,* 334 B.R. at 513.

Therefore, we hold that the trial court erred by concluding that Nu–Way's judgment lien did not attach to the secured claim against Economy because of its acquisition with funds from the Delp IRA. Accordingly, we sustain the remainder of

Nu–Way's third issue and the entirety of its fifth issue.

## Exempt Status of IRA Under Internal Revenue Code

Nu–Way contends in its first and second issues respectively that the court erred by refusing to find that the Delp IRA lost its exempt status because the use of funds from that account to acquire the secured claim and release is a prohibited transaction under the Internal Revenue Code and because the Economy judgment was not reported to the Internal Revenue Service.

■ Under section 408(e)(2)(A) of the Internal Revenue Code, an IRA "ceases to be an individual retirement account" if the account holder "engages in any transaction prohibited by section 4975." 26 U.S.C.A. § 408(e)(2)(A) (West Supp.2006). Thus, an IRA loses its status as exempt property in a bankruptcy proceeding if the account holder engages in a prohibited transaction under section 4975. *See In re Hughes,* 293 B.R. 528, 530 (Bankr.M.D.Fla.2003).

Nu–Way contends that Delp's use of funds from the IRA for the acquisition of the secured claim and release constituted a "prohibited transaction" under several provisions of section 4975:(1) the "lending of money or other extension of credit between [the IRA] and a disqualified person"; *id.* § 4975(c)(1)(B) (West Supp. 2006); (2) the "use by or for the benefit of a disqualified person of the income or assets of [the IRA]"; *see id.* § 4975(c)(1)(D) (West Supp.2006); and (3) the use of "the income or assets of [the IRA] in [Delp's] own interest or for his own account." *Id.* § 4975(c)(1)(E) (West Supp.2006).

Under subdivision (c)(1)(D), the parties dispute whether Delp received a "benefit" from the FFRE transaction. To recap the facts, $250,000 was paid from the Delp IRA to FFRE at Delp's direction. In

return, First Financial assigned the secured claim against Economy to the IRA and released Delp from the personal guaranty he had previously given for the Economy debt.

▆▆ Delp contends primarily that he received no "benefit" from the release because his guaranty was then worthless (as evidenced by his bankruptcy). We disagree.

▆▆ A guaranty agreement "creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform." *Republic Nat'l Bank v. Nw. Nat'l Bank*, 578 S.W.2d 109, 114 (Tex.1978); *accord Garner v. Corpus Christi Nat'l Bank*, 944 S.W.2d 469, 475 (Tex.App.-Corpus Christi 1997, writ denied); *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 185 (Tex.App.-Fort Worth 1995, no writ). In bankruptcy proceedings, a debtor's guaranty is treated as a contingent debt. *See In re Pennypacker*, 115 B.R. 504, 507 (Bankr.E.D.Pa.1990); *Craig Corp. v. Albano (In re Albano)*, 55 B.R. 363, 366 (Bankr.N.D.Ill.1985); *Guar. Bank v. Lone Star Life Ins. Co.*, 568 S.W.2d 431, 433 (Tex.Civ.App.-Dallas 1978, writ ref'd n.r.e.).

It has been held in bankruptcy proceedings that a guarantor "derives measurable economic benefit from a payment on the guaranteed debt, to the extent the [guarantor's] contingent liability on the personal guaranty is reduced." *Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Servs., Inc.)*, 980 F.2d 792, 797 (1st Cir.1992). If a mere reduction in a guarantor's contingent liability constitutes

a benefit to the guarantor, then a complete release from liability on a guaranty is likewise a benefit to the guarantor.

The fact that Delp was insolvent at the time of the release is irrelevant. *See Meridith Millard Partners v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1555–56 (10th Cir. 1993). Whether he received a benefit from the release must be determined as of the date of the release. *Id.* At the time of the release (*i.e.*, before confirmation of the bankruptcy plan), Delp remained liable on the guaranty. Thus, he received a benefit from the release. *Id.*

Therefore, because funds from Delp's IRA were used for his benefit, this was a prohibited transaction under section 4975(c)(1)(D). *See O'Malley v. Commissioner*, 972 F.2d 150, 153 (7th Cir.1992) (payment of disqualified person's legal fees by pension fund was prohibited transaction);[6] *Rollins v. Commissioner*, 88 T.C.M. (CCH) 447, 2004 WL 2580602, at *9, 2004 Tax Ct. Memo. LEXIS 272, at *31 (T.C.2004) (disqualified person committed prohibited transaction where he "sat on both sides of the table"); *Harris v. Commissioner*, 67 T.C.M. (CCH) 1983, 1994 WL 12316, at *2, 1994 Tax. Ct. Memo LEXIS 31, at *4 (T.C.1994) (owners of IRA committed prohibited transaction by using funds from IRA to purchase personal residence).

Because Delp engaged in a prohibited transaction in December 1992, his IRA "cease[d] to be an individual retirement account as of the first day of such taxable year." 26 U.S.C.A. § 408(e)(2)(A). Under section 42.0021(a), an IRA "is exempt from

---

**6.** The trial court recites in Conclusion of Law No. 96, "The documentary evidence before the Court demonstrates Delp's invasion of the IRA corpus to defend against his IRA's assets being taken from him." This too appears to constitute a prohibited transaction, though Nu–Way does not contend that it is. *See O'Malley v. Commissioner*, 972 F.2d 150, 153 (7th Cir.1992).

attachment, execution, and seizure for the satisfaction of debts unless the ... account does not qualify under the applicable provisions of the Internal Revenue Code of 1986." Act of May 27, 1989, 71st Leg., R.S., ch. 1122, § 1, 1989 Tex. Gen. Laws at 4627–28 (amended 1995). Accordingly, because the Delp IRA no longer qualifies as an individual retirement account under the Internal Revenue Code, it is no longer exempt from creditors under section 42.0021. *See Jones v. Am. Airlines, Inc.,* 131 S.W.3d 261, 270 (Tex.App.-Fort Worth 2004, no pet.).

As we have already explained, when an asset which was exempt during a bankruptcy proceeding loses its exempt status, the holder of a nondischargeable claim may seek to enforce that claim against the previously exempt asset. *See S & C Home Loans,* 278 B.R. at 181; *Hyde,* 334 B.R. at 513. For these reasons, we sustain Nu–Way's first and second issues.

## Turnover Relief

Nu–Way contends in its seventh issue that the court abused its discretion by denying its request for turnover of the funds in the Delp IRA.

We have determined that the entirety of the funds in the Delp IRA are not exempt from creditors. Section 31.002(a)(2) of the Civil Practice and Remedies Code provides that a "judgment creditor is entitled" to turnover relief for property that "is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." Tex. Civ. Prac. & Rem.Code Ann. § 31.002(a)(2) (Vernon Supp.2006).

A creditor may obtain turnover relief for "property that is in the debtor's possession or is subject to the debtor's control." *Id.* § 31.002(b)(1); *see also Gerdes,* 155 S.W.3d at 546; *Bay City Plastics,* 106 S.W.3d at 325. The parties have stipulated that the Delp IRA "is and has

always been self-directed." Thus, the IRA is subject to Delp's control.

Therefore, because the entirety of the funds in the Delp IRA are non-exempt and because the IRA is subject to Delp's control, the court abused its discretion by denying Nu–Way's request for turnover relief. Accordingly, we sustain Nu–Way's seventh issue.

## Attorney's Fees

Nu–Way contends in its eighth issue that the court erred by awarding attorney's fees to Delp. Nu–Way contends in its ninth issue that the court erred by directing Nu–Way to pay Delp's attorney's fees directly to his attorneys. Nu–Way contends in its tenth issue that the court erred by failing to offset the attorney's fee award and credit those sums toward Nu–Way's judgment against Delp.

The trial court awarded attorney's fees to Delp after finding that Nu–Way committed a breach of contract (namely, by seeking to collect against the Delp IRA). In the alternative, the trial court awarded attorney's fees under the Declaratory Judgments Act.

We have determined that the Delp IRA is not exempt from creditors. Therefore, Nu–Way did not "breach" the bankruptcy plan by seeking to enforce its judgment against assets held in the IRA, and Delp is not entitled to attorney's fees under a breach-of-contract theory. *See Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997) (party must prevail on contract claim to recover attorney's fees); *Flagship Hotel, Ltd. v. City of Galveston,* 117 S.W.3d 552, 564 (Tex.App.-Texarkana 2003, pet. denied) (same); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1997) (providing for award of attorney's fees in suit on contract).

■ However, a party need not prevail on a claim for declaratory relief to recover attorney's fees. *See Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex.1996); *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 238 (Tex.App.-Dallas 2004, pet. denied); *Nat'l Café Servs., Ltd. v. Podaras*, 148 S.W.3d 194, 198 (Tex.App.-Waco 2004, pet. denied). Nevertheless, because we have concluded that Delp should not prevail on the merits, we will remand this cause to the trial court to reconsider the attorney's fee award. *See Nat'l Café Servs.*, 148 S.W.3d at 198. Thus, we sustain Nu–Way's eighth issue.

Even though we will remand for reconsideration of the attorney's fee award, we also address the remaining issues because they are likely to arise on remand. See *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 81 (Tex.1997); *Sheshtawy v. Sheshtawy*, 150 S.W.3d 772, 780 (Tex.App.-San Antonio 2004, pet. denied); *In re J.B.*, 93 S.W.3d 609, 617 (Tex.App.-Waco 2002, pet. denied).

■ The trial court purportedly followed federal law by directing Nu–Way to pay the attorney's fee award directly to Delp's attorneys. However, the attorney's fee award is governed solely by state law. Texas courts have consistently condemned the award of attorney's fees directly to counsel. *See, e.g., Fort Bend County v. Martin–Simon*, 177 S.W.3d 479, 486 (Tex. App.-Houston [1st Dist.] 2005, no pet.); *Graco, Inc. v. CRC, Inc. of Tex.*, 47 S.W.3d 742, 746–47 (Tex.App.-Dallas 2001, pet. denied); *Transp. Ins. Co. v. Franco*, 821 S.W.2d 751, 755 (Tex.App.-Amarillo 1992, writ denied).

■ Nevertheless, it has also been held that a party who has been ordered to pay attorney's fees in this manner does not have standing to challenge this aspect of the attorney's fee award. *See Martin–*

*Simon*, 177 S.W.3d at 486; *Transp. Ins. Co.*, 821 S.W.2d at 755. This is because it is usually "immaterial" to the party paying the attorney's fee award how those fees are handled by the prevailing party. *See Transp. Ins. Co.*, 821 S.W.2d at 755. Here however, because Nu–Way is a judgment creditor of Delp, the manner in which the attorney's fee award is handled is a matter of legitimate concern to Nu–Way. Thus, we conclude that Nu–Way has standing to challenge the manner in which the trial court ordered that the attorney's fees be paid. *Cf. Fort Bend County*, 177 S.W.3d at 486; *Transp. Ins. Co.*, 821 S.W.2d at 755.

The court erred when it ordered Nu–Way to pay Delp's attorney's fees directly to his attorneys. *See Martin–Simon*, 177 S.W.3d at 486; *Graco*, 47 S.W.3d at 746–47; *Transp. Ins. Co.*, 821 S.W.2d at 755. Accordingly, we sustain Nu–Way's ninth issue.

■ A set-off is required when parties hold mutual judgments against each other. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex.1995); *Beutel v. Dallas County Flood Control Dist.*, 916 S.W.2d 685, 693 (Tex.App.-Waco 1996, writ denied); *Building Concepts, Inc. v. Duncan*, 667 S.W.2d 897, 902–03 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.) Here, the parties have stipulated that Nu–Way holds a valid, unpaid judgment against Delp. Thus, the court erred by denying Nu–Way's request that its judgment against Delp be set off against the attorney's fees awarded in Delp's favor. *See Building Concepts*, 667 S.W.2d at 902–03. Accordingly, we sustain Nu–Way's tenth issue.

## Conclusion

The court erred by rendering judgment in Delp's favor for breach of contract and

by rendering judgment that Nu–Way take nothing on its claims. The court also erred by ordering Nu–Way to pay Delp's attorney's fees directly to his attorney and by denying Nu–Way's request that its judgment against Delp be set off against the attorney's fees awarded in Delp's favor. Accordingly, we reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

This concurring opinion will address (1) those portions of the majority opinion which are unnecessary and therefore do not constitute binding authority of this Court, and (2) those portions of the opinion that are simply erroneous but do not impact the ultimate result of the judgment. It will then comment on some other matters in the majority opinion before I conclude, concurring only in the Court's judgment.

## PURE DICTA

The entirety of the section "Exempt Status of IRA Under Bankruptcy Plan" in the majority opinion is pure dicta. It is dicta because it is completely unnecessary to the disposition of the appeal and, thus, no holding relies upon it for the effect of the judgment. The reason this section is unnecessary to the disposition of the appeal is because, for the majority opinion, the section "Exempt Status of IRA Under Internal Revenue Code" is the section which actually answers the question of whether or not the assets held by the IRA are exempted. Accordingly, this entire section should be omitted from the majority opinion and no reliance should be put upon it by those who come after us.

## ERRONEOUS STATEMENTS

Within the section "Exempt Status of IRA Under Bankruptcy Plan" there are various erroneous statements and this section, thus, reaches an unsupportable result. The majority cites *Leibman v. Grand,* 981 S.W.2d 426, 435 (Tex.App.-El Paso 1998, no pet.) with a parenthetical noting "Texas law does 'not provide an exemption for currency, checks, or negotiable instruments.'" The linchpin of this section, which is based upon this authority, is the statement "It is undisputed that the secured claim would not have been an exempt asset if Delp had acquired it before filing the bankruptcy petition." This statement is not only wrong because the issue is not undisputed; the law is, in fact, contrary to the inference being made by the majority. Of course, the statement is true of anything that is not exempt, but the statement of the majority, in the literal sense of its truth, is totally irrelevant. The question, if necessary to be asked in any context at all, would be: "Would the secured claim [the note] have been an exempt asset if Delp's *IRA* had acquired it before filing the bankruptcy petition?" If the asset is owned by an IRA, and the IRA is exempt, the asset owned by the IRA is exempt. And an IRA can, under normal circumstances, own negotiable instruments such as the note.

The majority's error in this regard cascades down to a holding that the purchase of an asset which would not be exempt for the individual, Delp, with exempt assets from an IRA subjects the newly acquired "non-exempt" asset to seizure/turnover. I could readily distinguish the cases cited by the majority to back into this position, but there is no constructive purpose to be accomplished by doing so.

The IRA apparently had cash to purchase the note. The cash was exempt because it was cash in the IRA, not Delp's

cash. But under the majority's theory, the cash, before the purchase, could not have been an exempt asset under Texas law. This is because they attribute the same rules regarding what can be owned by an exempt asset, the IRA, as they do to what assets cannot be exempt if owned by the individual debtor, Delp. Under the majority's theory, any "currency, checks, or negotiable instruments," held by an IRA would be a non-exempt asset of the bankruptcy debtor. This is simply not the law.

The dicta of the majority should be frightening to anyone who owns an IRA. What it essentially means is that if the assets within an IRA contain or change from one form of currency, check, or negotiable instrument to another form of currency, check or negotiable instrument still owned by the IRA, the assets have nevertheless lost their exempt status in a bankruptcy proceeding. But the truth is that just because the assets within the IRA plan change from one form, like cash, to another form, like stock, the exempt character of the asset does not change. This is because the exempt asset is the IRA, not the individual instruments within the IRA. There has to be some action or transaction other than the ownership or purchase of the type assets we normally expect IRAs to own that causes an IRA to lose its exempt status.

### PROHIBITED TRANSACTIONS

The majority discusses two prohibited transactions. The first is whether or not a measurable benefit received by a guarantor of debt due to a transaction involving an IRA is a prohibited transaction. The second is the question of whether or not the payment of attorney's fees from the IRA assets is a prohibited transaction. I will discuss only the second.

In footnote 6, the majority concludes that Delp has engaged in a prohibited transaction by having paid the attorney's fees in defense of the IRA corpus against Nu–Way's efforts to have their lien asserted against them. For this proposition, they cite *O'Malley v. Commissioner*, 972 F.2d 150, 153 (7th Cir.1992). The attorney's fees paid in *O'Malley* that were determined to be a prohibited transaction were not payments made to defend and protect the IRA's exempt status. The attorney's fees paid were owed by a disqualified person and the payment using IRA funds was, therefore, a prohibited transaction leading to defeating the IRA status of the entire fund. In this case, however, the payments were made to an attorney for the express purpose of defending and protecting the IRA's exempt status. Payment of attorney's fees out of the IRA for the defense of the IRA exempt status is entirely appropriate. If the majority's view is the law, an IRA could never protect itself from creditors and all defense of the IRA would have to be paid by the owner of the IRA which assumes they would be able to pay for it out of their other assets.

### OTHER QUESTIONS

Because, according to the majority, the IRA did not exist at the time the bankruptcy plan was confirmed, but it is undisputed that over a million dollars in assets in the IRA's name did exist, there are some interesting issues raised that no one has addressed.

1. How will the IRS's (that is all taxpayer's) claim for taxes and penalty on the premature distribution of the IRA be collected?

2. Does Nu–Way even have standing to assert a violation of the Tax Code in the management, operation, and transactions within an IRA?

3. Does a state court have jurisdiction to resolve questions about the continued vitality of an IRA or are

these claims preempted under ERISA?

## STANDARD OF REVIEW

The standard of review in this case is not a de novo determination on stipulated facts as stated by the majority. This was a trial before the court. Some facts were stipulated. But the parties also submitted depositions, affidavits, and numerous exhibits. No live testimony was received. The trial court was, nevertheless, required to make some factual determinations and did so in extensive findings of fact.

This causes me to ask an additional question: Has the majority improperly ignored the trial court's findings or implied findings in support of the judgment?

## CONCURRING IN THE JUDGMENT

This case, due to its complexity as exhibited by the presence of a half dozen briefs as well as the submission of other legal authorities, has consumed an inordinate amount of my time. It involves areas of the law that state courts do not deal with frequently. I have studied the briefs and authorities provided by both parties as well as the majority opinion. While I have real concerns over many of the statements, findings, holdings, and conclusions in the majority opinion, I, nevertheless, have concluded from my independent analysis that the result the majority has reached is a proper one under the law and the facts of this case. To document this, I could further delay the disposition of this appeal by writing a detailed concurring opinion. That would be my preference, and I would do so if I had more time and other resources. But I do not have that luxury, so I will simply conclude by stating that, although I cannot join the majority opinion for the reasons stated and others, I do, nevertheless, concur in the Court's judgment.